665 A.2d 1252

**Rhonda MILLER, on Behalf of the Minor Children, Joshua WALKER and Crystal Walker**

v.

**Lawrence WALKER, Sr., Appellant.**

Superior Court of Pennsylvania.

Submitted June 27, 1995.

Filed Oct. 3, 1995.

538

540

James W. Zerillo, Pottstown, for appellant.

Rhonda Miller, pro se, appellee.

Before ROWLEY, President Judge, and HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from an order of the lower court granting appellee's petition for protection from abuse filed on behalf of her minor children. We affirm.

Appellee filed a petition for protection from abuse on behalf of her minor children, Crystal and Joshua Walker, on November 14, 1994. She alleged that the children's father (appellant) had spanked Joshua with a board causing bruises on the child's leg. Joshua also had a bruise on his upper arm inflicted when his father grabbed him. Appellee alleged in her petition that appellant had gotten mad at Joshua when Joshua threw his shoe on the bathroom floor. She further contended that her daughter Crystal had seen and heard her father hit Joshua, and had heard Joshua crying. Crystal was afraid if she said anything about what was going on that she too would be hit.

Appellee alleged that the incident involving the paddle occurred on November 12, 1994. The children were at their father's home at the time. The next day, when the children

were at home with their mother (appellee), she noticed the bruises on Joshua's leg and arm. When she asked him about it, he told her about the spanking incident. Appellee took pictures of the bruises. The next day, November 14, 1994, appellee filed the instant petition. The trial court granted a temporary protection from abuse order on that date under which appellant was not to have any contact with appellee or the children, prohibited appellant from entering the premises of appellee's home, and awarded temporary legal custody of the children to appellee.

By order of court, appellant was allowed visitation with the children on November 24, 25, 26 and 27, 1994. On December 1, 1994, the trial court issued an order allowing appellant to visit the children on December 3, 5, and 9–11, 1994. The trial court conducted a hearing on the protection from abuse petition on December 15, 1994, after which it entered a final protection from abuse order. The final order granted the request for relief and directed that appellant refrain from abusing, harassing or threatening appellee or her children in any place, and awarding appellee legal custody of the minor children. At the hearing, the court ordered that appellant be allowed supervised visitation with the children. N.T., December 15, 1994, at 69.

Appellant filed a petition for reconsideration of the December 15, 1994 order which the lower court denied. Appellant then filed a timely appeal of the December 15, 1994 order in which he raises the following issues:

1. Whether abuse to the minor child, Joshua Walker, was established within the meaning of the Protection from Abuse Act by a preponderance of the evidence?

2. Whether the abuse, if established was an allowable exercise of reasonable corporal punishment pursuant to Pennsylvania law?

3. Whether the trial court erred in admitting, over objection, evidence of prior acts of abuse by the appellant which were not temporally related to the alleged abuse in ques-

tion, relevant, or pleaded in appellee's petition for protection from abuse?

4. Whether a protection from abuse order is a final order subject to appeal as of right?

We will first address whether the order appealed from is a final one permitting an appeal as of right.

■ With certain exceptions, an appeal may be taken as of right from any final order of a lower court. Pa.R.A.P., Rule 341(a), 42 Pa.C.S.A. A final order is any order that:

(1) disposes of all claims or of all parties; or

(2) any order that is expressly defined as a final order by statute; or

(3) any order entered as a final order pursuant to subsection (c) of this rule.

(c) When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims or parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims or parties shall not constitute a final order.

*Id.,* Rule 341(b) and (c).

In the instant case, appellee brought an action seeking a protection from abuse order against appellant. Her claim consisted of the allegations that appellant had inflicted physical abuse on her son Joshua and that her daughter Crystal harbored fear of abuse as a result of seeing and hearing the abuse inflicted on her brother. The lower court issued a temporary, and then a final order granting appellee's petition, directing that appellant refrain from the abuse, and granting legal custody of the children to appellee. This was a full adjudication of the claim before the lower court on the basis of

the petition before it. Thus, the order was a final one under Rule 341(b). After the lower court's adjudication, there remained no further claims or issues to decide pursuant to appellee's petition for protection from abuse. Although the record indicates that the parties may also be involved in a custody action concerning the same two children, that action, as evidenced by the record in that case, is completely separate and distinct from the present protection from abuse action. As Rule 341(c) indicates, it is in situations that involve multiple parties or more than one claim for relief in a particular *action* that an adjudication of one of those claims or as to one of those parties may not constitute a final order disposing of the entire case. This case involves a discrete protection from abuse action in which the only claim presented to the lower court was adjudicated by it. Thus, the order appealed from was a final one from which appellant properly appealed as of right.

Appellant's next contention is that appellee did not establish that abuse of Joshua had occurred within the meaning of the Protection from Abuse Act. When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. *Snyder v. Snyder*, 427 Pa.Super. 494, 629 A.2d 977 (1993). On appeal, this court defers to the credibility determinations of the lower court as to witnesses who appeared before it. *Alfred v. Braxton*, 442 Pa.Super. 381, 659 A.2d 1040 (1995).

"Abuse" under the Protection From Abuse Act is defined as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape,

spousal sexual assault or involuntary deviate sexual intercourse with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

. . . . .

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, . . . under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title. . . .

23 Pa.C.S.A. § 6102(a). Family and household members, under the Protection from Abuse Act, include "parents and children." *Id.*

At the hearing in the instant case, the trial court heard evidence from appellee, Joshua, Crystal, appellant, and a social worker from Children and Youth Services. The court also reviewed five photographs of the bruises which appellee alleged that Joshua had incurred as a result of the alleged abuse. The court found the testimony of appellee and the children convincing. He found that appellant was not a credible witness. He further found that the social worker had not applied a proper standard in her determination that she did not find abuse present. The trial court also noted that the CYS worker did not see Joshua until November 16, approximately four days after the alleged abuse occurred. On this basis, the trial court concluded that the evidence was sufficient to support a conclusion that abuse of Joshua had occurred under section (1) of the "abuse" definition. Specifically, the trial court determined that "bodily injury" to Joshua had been inflicted under that subsection.

Appellant contends first that "bodily injury" was not established by the evidence elicited at the hearing. Appellant recognizes that the trial court is empowered to assess the credibility of witnesses at trial. He argues, however, that the

"credible" evidence did not establish "bodily injury" within the meaning of the Protection from Abuse Act.

We find no merit to this contention. Viewing the evidence under our standard of review, we find it more than sufficient to establish the existence of bodily injury. Joshua's testimony established that his father struck him with a board on the leg, and that he (Joshua) experienced pain and developed a bruise from this. Further, Joshua testified as to his father's gripping him on the arm, resulting in bruising in that area. Joshua also testified that he was afraid that his father might do these things to him again. The testimony of Crystal established that she heard Joshua crying after their father took a board into the room with Joshua. Appellee testified that she had observed bruising of her children on prior occasions and that appellant had a history of difficulty in controlling his temper. Photographs allegedly taken the day after the "board" incident and submitted to the court showed the presence of bruises on Joshua's arm and leg.

This evidence was clearly sufficient to establish the existence of bodily injury by a preponderance of the evidence. Appellant gives various reasons why the trial court should have refused to find the above evidence credible; however, each of those arguments itself involves a credibility determination. The trial court clearly acted properly in assessing the credibility of the witnesses, and the evidence supports the trial court's finding.

 Appellant next argues that even if bodily injury did occur, that he caused such injury in the exercise of allowable corporal punishment under Pennsylvania law. Appellant cites 18 Pa.C.S.A. § 509 which provides:

The use of force upon or toward the person of another is justifiable if:

(1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guardian or other responsible person and:

(i) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the preventing or punishment of his misconduct; and

(ii) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation.

*Id.* We do not find this argument persuasive. Section 509, *supra,* sets forth various defenses to criminal actions under the Crimes Code. 18 Pa.C.S.A. § 101 et seq. To that extent, section 509 permits a parent to inflict corporal punishment which accords with the purposes of subsection (1) and does not rise to level of subsection (2), without being charged or convicted of a criminal offense. The Protection from Abuse Act addresses a different problem, *i.e.,* the prevention of abuse (including "bodily injury") inflicted by members of one's family or household. The remedies provided by the Protection from Abuse Act allow the removal of the abusing family member from the household so that additional injury to the victim does not occur. Obviously, the intent is to allow persons to reside peaceably and without fear of injury within their own families or residences. *See Weir v. Weir,* 428 Pa.Super. 515, 524, 631 A.2d 650, 654 (1993) (purpose of Protection from Abuse Act is to "provide spouses, household members, intimate partners and children with immediate temporary protection from abuse"); *Lee v. Carney,* 435 Pa.Super. 405, 406, 645 A.2d 1363, 1364 (1986) (purpose of Protection From Abuse Act is to protect victims of domestic violence from the perpetrators of such abuse); *Eichenlaub v. Eichenlaub,* 340 Pa.Super. 552, 560, 490 A.2d 918, 922 (1985) (purpose of Protection from Abuse Act is advance protection of physical and sexual abuse). Thus, appellant's argument that his conduct did not rise to the level of criminal culpability does not defeat the trial court's protection from abuse order.

Appellant also contends that the inclusion of subsection (4) within the definition of abuse in section 6102(a) of the Protection from Abuse Act indicates the legislature's intention to exclude corporal punishment of a child from the purview of

the Act. Subsection (4), *supra,* indicates that physical or sexual abuse of minor children, including that defined under the Child Protective Services Law, falls within the definition of abuse under the Protection from Abuse Act. The Child Protective Services Law, defines the term "child abuse" as follows:

(i) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.

(ii) An act or failure to act by a perpetrator which causes nonaccidental serious mental injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

(iii) Any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

(iv) Serious physical neglect by a perpetrator constituting prolonged or repeated lack of supervision or the failure to provide essentials of life, including adequate medical care, which endangers a child's life or development or impairs the child's functioning.

23 Pa.C.S.A. § 6303(b). "Serious physical injury" is defined under the Child Protective Services Act as an injury that: "(1) causes a child severe pain; or (2) significantly impairs a child's physical functioning, either temporarily or permanently." *Id.,* § 6303(a). Appellant contends that the presence of subsection (4) in the definition of abuse under the Protection from Abuse Act indicates that the legislature intended only for serious physical injury to a child under the Protective Services Act to be included within the definition of abuse under the Protection from Abuse Act. We disagree.

In construing statutes, the object of all such interpretations is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). "Every statute shall be construed, if possible, to give effect to all its provisions." *Id.*

"Statutes in pari materia[1] shall be construed together, if possible, as one statute." *Id.*, § 1932(a).

The purpose of the Child Protective Services Law is, *inter alia,* "to establish in each county protective services for the purpose of investigating reports [of suspected child abuse] swiftly and competently, provid[e] protection for children from further abuse and provid[e] rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate." 23 Pa.C.S.A. § 6302(a). Under the Child Protective Services Law, a child may be taken into protective custody where immediately necessary to protect the child. *Id.* § 6315. Thus, a child may be taken from its home and kept in protective custody in order to protect the child from further child abuse as defined in section 6303.

The Protection from Abuse Act, on the other hand, authorizes the court to enter protective orders directing a defendant from abusing a petitioner or minor children. 23 Pa.C.S.A. § 6108(a). A protection from abuse plaintiff may have a defendant excluded from her household by court order or may be awarded temporary custody of minor children. *Id.* The court may also order a protection from abuse defendant to refrain from any contact with a petitioner or minor children. *Id.* Other orders and remedies are authorized under the act for abuse of family and household members under the act. Violation of a protection from abuse order is punishable by imprisonment or fine. *Id.* § 6114. It is clear that the legislature, by enacting the Protection from Abuse Act, desired to give victims of abuse within the home various legal remedies to control and stop the abuse.

The inclusion of subsection (4) within the definition of abuse under the Protection from Abuse Act, section 6102(a), *supra,* evidences the legislature's intent to make available to victims of child abuse as defined under the Child Protective Services Act the legal remedies of the Protection from Abuse Act. The

1. "Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things." *Id.* § 1932(a).

remedy for child abuse under the Child Protective Services Act is the removal of the child from the home and placement of the child in protective custody. 23 Pa.C.S.A. § 6315. Under the Protection from Abuse Act, a parent, guardian, or adult household member may seek the legal remedies available under that Act, *i.e.*, a protective order prohibiting contact between an abuser and a victim or exclusion of the abuser from the victim's residence, for a victim of child abuse.

However, it is clear that the definition of abuse under the Protection from Abuse Act is broader than the definition of child abuse under the Child Protective Services Act. Under the Protection from Abuse Act, "bodily injury" caused "intentionally, knowingly, or recklessly" to a family or household member is included within the definition of abuse, as well as "serious bodily injury." 23 Pa.C.S.A. § 6102(a). As we have previously indicated, "family or household members" under the Protection from Abuse Act include "parents and children." *Id.*

■ The General Assembly's purpose in including a broader definition of abuse than found in the Child Protective Services Law is undoubtedly related to the purposes of the Protection from Abuse Act. The goal of the Protection from Abuse Act is to provide an immediate remedy to victims of domestic abuse, thereby seeking to prevent further instances of abuse from occurring. *See Weir v. Weir, supra; Eichenlaub v. Eichenlaub, supra.* Thus, for a remedy to be available under the Protection from Abuse Act, it is not necessary that the physical harm to the child be as serious as that which is required for a child to be removed from his home and placed in protective custody. The goal of the Protection from Abuse Act is protection and the prevention of further abuse by removing the perpetrator of the abuse from the household and/or from the victim for a period of time. Viewing the purposes of the Acts in this light, the General Assembly's purpose in defining abuse more broadly in the Protection from Abuse Act is clear.

In the instant case, the evidence supported the lower court's conclusion that abuse had occurred to Joshua by virtue of the bodily injuries he received. The protection from abuse order entered by the lower court was consistent with the purposes of the act to remove a perpetrator of abuse from the victim for a limited period of time. The Protection from Abuse Act does not outlaw corporal punishment by a parent. However, the Act will permit a remedy for bodily injury to a family or household member which is inflicted intentionally, knowingly, or recklessly. 23 Pa.C.S.A. § 6102(a).

 It is well known by most parents that corporal punishment properly inflicted will not produce bodily injury in a child. However, "corporal punishment" inflicted recklessly or in an enraged manner may result in bodily injury. Here, the lower court received testimony and photographs of bodily injuries to a child allegedly inflicted for purposes of "punishment." The lower court also heard testimony that the children had returned from their father's home on prior occasions with bruises on their bodies, and that their father had difficulty controlling his temper. Both children indicated fear of their father's potential infliction of "punishment." This was all substantial evidence justifying the lower court's protection from abuse order.

Appellant contends that a protection from abuse order in a case such as this, where the intention was corporal punishment and not abuse, is unfair in that it prevents him from contact with his children. The record belies appellant's contention. During the time the temporary protection from abuse order was in force, appellant was granted several instances of visitation with his children. In addition, the final protection from abuse order does not prohibit appellant from any contact with his children. Appellant is simply directed to refrain from abusing the children in any place where they may be found. Further, the trial court indicated at the hearing on the petition that supervised visitation of appellant with the children would be permitted. Thus, appellant's suggestion that the protection from abuse order has precluded him from

any contact with his children for a period of nine months is utterly devoid of any merit.

■ Finally, appellant contends that the trial court improperly admitted testimony concerning prior instances of alleged abuse. Appellant asserts that the trial court erred in allowing appellee to testify about incidents which occurred in 1988, six years prior to the incident at issue in this case. Specifically, appellant objected to the following testimony:

Q. [BY THE COURT]: Okay. Other than the bruises that you saw on your son, is there anything you observed that you think is relevant to this?

A. He's been abusive with our children in the past, during our marriage.

MR. ZERILLO: Objection, Your Honor.

THE COURT: On what basis?

MR. ZERILLO: Your Honor, the marriage ended over four years ago. And I don't believe it's relevant to this particular—

THE COURT: All right. That objection is overruled.

Q. [BY THE COURT]: You may tell me about the abuse during the marriage that you observed.

A. At one time, Joshua was under a year old and Crystal was not quite three yet—or just turned two. I can't quite remember. I went to borrow a vacuum cleaner from a friend. I came back home. My son was burned up with bleach. My daughter, apparently, had gotten a hold of bleach, poured it all over her. And he—I ran—I had some friends that lived down the street, one who worked at the hospital, and stuff. And, you know, they put my son in, like—you know, they knew not to put him in cold water, and stuff. I wasn't sure how to handle it. His leg was all burned up from bleach.

N.T., December 15, 1994, at 5–6.

■ Questions concerning the admission ·or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present. *Soda v. Baird,* 411 Pa.Super. 80, 600 A.2d 1274 (1991). In *Snyder v. Snyder, supra,* the court held

that a person filing a protection from abuse petition will not be "rigorously limited to the specific allegations of abuse found in the Petition." 427 Pa.Super. at 502, 629 A.2d at 981. The court further held that in light of the purpose of the Act to "prevent imminent harm to abused person(s)," some flexibility must be allowed in the admission of evidence relating to past acts of abuse. *Id.* at 503–04, 629 A.2d at 982.

In this case, the trial court permitted the testimony of appellee as to past incidents of abuse of the children which appellee had observed during her marriage to appellant. At the time of the hearing, the children were seven and eight years old. The incident testified to by appellee occurred when the children were one and two years old. Despite a time period of six years, it was not an abuse of discretion for the trial court to hear evidence related to prior abuse of the children. In light of the protective purposes of the act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a protection from abuse order. If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have assigned less weight to the testimony. However, it was not an abuse of discretion for the trial court to hear the evidence. Past abusive conduct on the appellant's part was a crucial inquiry necessary for entry of a proper order.

In addition, appellant's contention has no merit because the testimony given by appellee did not specifically implicate appellant in the incident. It appears from the testimony that appellee's daughter may have caused the bleach to spill onto her brother's leg. It is not clear from the testimony whether or not appellant was left in charge of the children. Thus, there was negligible harm incurred to appellant by the trial court's hearing of this testimony.

Having found no merit to any of the issues raised by appellant, we will affirm the order of the lower court.

Order affirmed.

ROWLEY, President Judge, files a concurring statement.

ROWLEY, President Judge, concurring.

I concur in the result. I would affirm the trial court's order in this disturbingly close case *only* because the deference we must afford a trial court under the required standard of appellate review, coupled with appellant's admission that the incident occurred, constrains me to do so.