J-S72014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JILL MCINTYRE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TONY RAY MCINTYRE, | |
| Appellant | No. 517 WDA 2014 |

Appeal from the Order Entered March 21, 2014
In the Court of Common Pleas of Erie County
Civil Division at No(s): 17033-14

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED JANUARY 05, 2015**

Appellant, Tony Ray McIntyre, appeals from a final protection from abuse (PFA) order entered against him on March 21, 2014, for a period of two years.  We affirm.

On March 14, 2014, Appellee, Jill McIntyre, filed a PFA petition alleging that Appellant was exhibiting behaviors that placed Appellee in danger of serious bodily injury.  That same day, the court conducted an *ex parte* hearing and issued a temporary PFA order against Appellant.

On March 21, 2014, a final PFA hearing was conducted.  The court thoroughly detailed the evidence presented at that hearing as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellee and Appellant have been married and living together for approximately five and a half years. Appellant is currently employed as a police officer for the City of Corry Police Department. However, Appellant is not actively working as he is receiving workers compensation due to injuries he sustained while on duty on August 23, 2013, when Appellant suffered two seizures and multiple facial fractures, which resulted in double vision, and Appellant was diagnosed with a traumatic brain injury. Appellant is currently being treated by five (5) physicians, including the VA hospital, for his injuries and condition.

On February 25, 2014, Appellee was out of the residence taking Appellant's mother to an appointment when Appellee decided to return to the residence with Appellant's mother to retrieve something from her computer. Prior to arriving, Appellee inquired from Appellant for permission to do so via text message to his phone. Appellant confirmed this was okay. While at the residence, Appellee had difficulty with their printer, so she again texted Appellant requesting he come downstairs from the bedroom, where he was napping, to fix the printer. Appellant came "stomping down the stairs, banging things, banging the printer, banging the computer, acting angry." Appellant admitted he was annoyed by [Appellee] about being asked to fix the printer at that time.

After the printer was fixed, Appellant returned to the bedroom upstairs, and Appellee proceeded to take Appellant's mother to her home and then returned to the residence. Appellee related Appellant seemed calm when she entered, which scared her, but soon thereafter, the verbal altercations again began between the two of them due to Appellee['s] bringing the Appellant's mother into the house, despite her asking for his permission prior to doing so. During this altercation, Appellee noticed Appellant had torn her "posters, and pictures and articles" off of the wall where she had hung them. In the past, Appellant has displayed physical signs of anger and violence when he kicked the doors in the residence, kicked Appellee's door to her vehicle and thrown a cell phone and his CPAP machine at the Appellee, breaking these items.

Eventually this altercation ceased when Appellant returned upstairs to the bedroom to sleep, stating he was not feeling well. Appellee then contacted a mutual friend of Appellee['s] and Appellant['s], who is a Cambridge Springs Police Officer, Kyle

Allen Grill, (hereinafter "Grill"), due to Appellee['s] being scared about the current situation[,] explaining Appellant had become aggressive and angry. Grill has known Appellant for seven years through military service and met Appellee a few years after that time at a military function. Based on the information received from Appellee, Grill advised Appellee that if she did not feel safe to leave the residence and telephone the police. In the meantime, Grill was on his way to their residence to assist. Upon arrival, Grill immediately proceed[ed] upstairs to the bedroom where Appellant was located. Grill, perceiving Appellant to be asleep, returned downstairs to obtain more information from [] Appellee about the situation. Upon hearing more of the story, Grill returned to the bedroom and woke Appellant up by knocking on the door frame and calling his name. Grill then asked Appellant as to what was going on, and Appellant replied he was not feeling well and did not currently want to talk about the situation. Grill then returned downstairs and observed the crumpled articles that Appellee had re-taped onto the wall.

Appellee called the Pennsylvania State Police reporting she was scared and was requesting to have Appellant removed from the residence. Upon inquiry by the Pennsylvania State Police, Appellee confirmed Appellant kept a loaded gun in the residence. The Pennsylvania State Police then requested Appellee remove Appellant's loaded gun from the residence, if possible. Appellant['s] possessing a gun in the residence had been a tense topic between the parties for some time as Appellee explained she is uncomfortable and fearful for her life [because] of such weapons. Appellee proceeded upstairs to the bedroom, where Appellant was sleeping, and she retrieved two bags from the closet. One bag contained the gun and the other bag contained knives. Appellant woke up and asked Appellee what she was doing. Appellee told him that she was "just grabbing something..." and took the bags downstairs and left in her car.

Grill observed this incident as he had followed Appellee upstairs and remained in the hallway. Grill observed Appellant get up after Appellee took the bags and go into [] the bathroom. Eventually, Appellee transferred the gun to Grill.

Appellee returned to the residence that evening and slept in the same bed as [] Appellant, but she moved out the next day on February 26, 2014. Following this time, Appellee received several "threatening" text messages from [] Appellant. One message, that was admitted into evidence as Appellee's Exhibit

1, contained Appellant's apology for his verbal abuse upon [] Appellee. Another text from [] Appellant mentioned that there had been an opossum on the deck, but that he had "taken care of it," directly followed by a request to talk. Appellant perceived this text message as threatening and feared for her life as she assumed Appellant had utilized his gun to kill the opossum, knowing that [Appellee] was fearful of guns.

Trial Court Opinion (TCO), 5/22/14, at 1 – 5 (citations to the record omitted).

Based on this evidence, the trial court granted Appellee's petition for a final PFA order. Appellant filed a timely notice of appeal, as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He now presents the following issue for our review:

> I. Whether the trial court erred in finding that the evidence was sufficient to establish that abuse occurred as defined in the Protection From Abuse Act and support[ed] an order of Protection from Abuse against [Appellant]?

Appellant's brief at 6.

Before addressing Appellant's claim, we note that "[o]ur standard of review for PFA orders is well settled. 'In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.'" **Stamus v. Dutcavich**, 938 A.2d 1098, 1100 (Pa. Super. 2007) (quoting **Drew v. Drew**, 870 A.2d 377, 378 (Pa. Super. 2005) (citation omitted)).

Here, Appellant claims that the evidence was insufficient to support a PFA order. We review such claims under the following standard:

> "When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from

- 4 -

abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." ... This court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999) (quoting *Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252, 1255 (1995)). We also note that the preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.,* to tip a scale slightly is the criteria or requirement for preponderance of the evidence. *Commonwealth v. Brown*, 567 Pa. 272, 786 A.2d 961, 968 (2001), *cert. denied,* 537 U.S. 1187, 123 S.Ct. 1351, 154 L.Ed.2d 1018 (2003).

*Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004).

In particular, Appellant maintains that the evidence presented at the final PFA hearing was insufficient to prove that he committed "abuse," as that term is defined in section 6102 of the Protection From Abuse Act (PFAA), 23 Pa.C.S. §§ 6101-6122. That section reads:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood.

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecution commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a).

Here, Appellee testified that Appellant behaved in an angry manner when she entered their home with his permission. Appellant then destroyed her personal belongings. This particularly concerned Appellee because, in the past, Appellant has broken her personal belongings by striking her with them. Appellee also testified that firearms make her fearful for her life, a fact which was known to Appellant, and prior to their marriage he agreed not to keep firearms in their home. Appellant nonetheless brought a firearm into the home, which he kept loaded with ammunition. When Appellee attempted to safely remove the weapon from the home and turn it over to a state trooper, she discovered a previously unknown bag of knives stored with the firearm. The next day, Appellant sent Appellee a series of text messages conceding he had verbally abused Appellee. In these texts, he also informed Appellee that he had "taken care of" an opossum at their home, which she believed meant he had killed an opossum using a firearm. In the next sentence of that text message, Appellant stated that he wanted to talk to Appellee.

In sum, Appellee's testimony, which was credited by the trial court, provided sufficient evidence for the trial court to conclude, by a preponderance of the evidence, that Appellee reasonably feared that Appellant's behavior placed her in danger of imminent serious bodily injury. Therefore, Appellant's challenge to the sufficiency of the evidence to support the entry of a final PFA order is meritless.

Order affirmed.

Judge Shogan joins this memorandum.

Judge Strassburger files a concurring memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/5/2015