J-A09009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| M.M. O/B/O R.H., III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| R.H., JR. | |
| Appellee | No. 1554 MDA 2016 |

Appeal from the Order Entered August 24, 2016
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2016-04664

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 27, 2017**

M.M. (Mother), on behalf of R.H., III (Child[1]), appeals the order entered August 24, 2016, in the Court of Common Pleas of Cumberland County, that dismissed the Protection From Abuse (PFA) Act[2] petition, filed against R.H., Jr. (Father).  Mother contends the trial court erred (1) in concluding that Mother had not proved abuse as defined by the PFA, and (2) by implicitly placing a higher burden of proof on Mother than that required by the PFA Act.  Based upon the following, we affirm.

_____

[1] Child is the parties' son.  He was 11 years old at the time of the hearing in this case.  **See** N.T., 8/24/2016, at 28.

[2] 23 Pa.C.S. § 6101 *et seq*.

We summarize the testimony presented at the August 24, 2016, PFA hearing, as follows. Preliminarily, we note that Father proceeded *pro se* at the hearing.[3]

Mother testified that the incident that was the basis of her PFA petition occurred on Friday, August 12, 2016, when Child was on a week-long vacation with Father in Georgia, during Father's period of custody.[4] **See** N.T., 8/24/2016, at 11. Mother testified that Child returned to her on Sunday, August 14, 2016, following the vacation, and Child's "neck was hurting really bad." **Id.** at 12. Child told Mother his neck was hurting, and she examined Child and saw he had marks on his neck. Mother took pictures of Child on her cell phone that day, Sunday, August 14, 2016. During the August 24, 2016, hearing, Mother showed eight pictures that were on her cell phone to the court, counsel, the guardian *ad litem* (GAL), and Father. **See id.** at 12-15. Mother testified that the pictures showed marks on Child's neck that looked "like fingers," and that Child did not have those marks before he went to Georgia. **Id.** at 15. Mother further testified

_____

[3] The PFA Act only requires that the court advise a defendant of the right to be represented at the hearing by counsel. **See** 23 Pa.C.S. § 6107(a). In this case, the trial court advised Father a continuance would be granted if Father wished to obtain an attorney. Father elected to proceed without counsel. **See** N.T., 8/24/2016, at 4.

[4] The parties operate under a custody schedule of a "week-on and then a week-off" during the summer, and during the school year Child sees Father "fifty percent of the time … Tuesday, Thursday, and every other Friday." N.T., 8/24/2016, at 42.

she took Child to see a doctor on Tuesday morning, and the physician prescribed pain medicine for Child. *Id.*

Mother stated that on Sunday, August 14, 2016, before she took the pictures and before she saw any marks, Father had called her to tell her "some incident happened." *Id.* at 16. Mother testified Child "is not allowed to have internet unless it has parental controls, so [Father] gave [Child] a tablet … and did not put on the parental controllers, so [Child] got to see something inappropriate." *Id.* Mother further testified that Father had told her he had "grabbed [Child] by the neck and hit him in the face." *Id.* at 17. Mother stated Father told her he had hit Child two times. *See id.* at 17-18. She also testified Father "told me like he punched him, but that's not what [Child] told me." *Id.* at 17. Mother testified Child also had a cut in the lip, "but you couldn't really see it," and she did not take pictures of the mouth. *Id.* at 18.

On cross examination by Father, Mother reiterated that Father told her he had hit Child twice. *See id.* at 21–22. Mother also reiterated that after Child was returned to her, she took pictures of his neck. *See id.* at 22. Mother admitted that Child plays football, and receives bruises from playing football. *See id.* at 23. Mother agreed that after she took the pictures of Child, she did not contact Father, and she filed the PFA petition. *See id.*

On redirect, Mother testified that Child did not play football the week he was on vacation with Father, and Child did not have marks on his neck before he left for vacation with Father. *See id.* at 25–26. On recross

- 3 -

examination, Mother agreed that Child was at football practice when Father picked Child up for the vacation on August 5, 2016. *See id.* at 26–27.

The trial court colloquied Child in court and determined Child was competent to testify. *See id.* at 27–32. Child testified that he was on a week-long vacation in Georgia with Father, his stepmother, and baby brother, when he got into trouble for "watching something inappropriate" on a Kindle. *Id.* at 33–34. He stated Father said, "you are lucky I don't -- whip your ass." *Id.* at 34. Child stated he did not receive any punishment on that day, but he was punished the next day. *See id.* at 35.

Child testified, "We were paddle boating, and I wanted to go to a big rock, so we went there, and my dad wanted to talk to me. So I came over to him and he grabbed me by the neck …." *Id.* at 35. He stated Father asked him, "why did you get your internet browser blocked," while holding his neck. *Id.* at 36. Child stated, "I kept on saying I don't understand what you are talking about, and he kept on squeezing harder and harder." *Id.* at 37. Child further testified that after Father let go of his neck, Father "smacked me in my face," with an "open" hand, "two times." *Id.* at 38. Child stated, "When he hit me, I fell on my knee with my hand on – one hand on the floor and one hand holding my face." *Id.* Child also testified, "I bit my lip the first time [Father] smacked me," and "[i]t was inside my mouth." *Id.* at 39. He stated his lip was not swollen and he did not know there were marks until the next day. *See id.* Child testified his neck still hurts "when I think about it." *Id.* Child stated he did "not want to visit

- 4 -

[Father] at his house … [b]ecause I don't know if he is going to hurt me again after this." *Id.* at 41.

On cross examination by Father, Father elicited Child's testimony that the summer custody schedule with Father was "week-on and then week-off," and Child agreed that during the school year he sees Father "fifty percent of the time … Tuesday, Thursday, and every other Friday." *Id.* at 42. Child admitted he had looked at inappropriate material on the Kindle, that Father had taken the Kindle, that Father said, "You are lucky I don't whip your ass," and that Father had not physically hit him after he said that to him. *See id.* at 43–44. Child testified Father hit him the next day. *See id.* at 44. Child stated that after he denied Father's questions about the internet content, Father hit him. *See id.* at 47. Child stated Father hit him twice, and "[t]he first time I fell down and the second time I didn't." *Id.* at 48. Child admitted after the incident Father told Child he was still going to punish him, and Child stated the specific punishment was that "I will not be able to see my cousins or anything like that, and I am not allowed to use any technology." *Id.* at 48.

The GAL then questioned Child. Child agreed he had told the GAL that Father hit him with an open hand. *See id.* at 51. The GAL asked, "[Y]ou didn't tell me you fell down, did you?" to which Child replied, "I did tell you." *Id.* at 52. Child admitted Father had told him he would not "have any fun anymore," and that Father meant Child would not "get to use [his] iPod or Kindle." *Id.* Child admitted that in the last year he had wanted to see

Father more, and as a result of that request the custody schedule had changed. *See id.* at 52–53. Child testified that now he "did not want to be there at all," but he still wanted Father to come to football games, call him on his birthday, and still wanted to see his step-mother and step-brother. *Id.* at 53.

Father took the stand and was questioned by the trial court. Father testified that on the evening prior to the incident, he had become aware that Child was viewing inappropriate material on a Kindle, and he waited until the next day and "pulled [Child] aside and talked to him on the rock." *Id.* at 56. Father testified, "I gave [Child] plenty of options, plenty of chances to admit what he was doing, and when [Child] lied to me, I did strike him. It was only one time and he never fell down. And I never hit him again. And after that I told him it would be zero fun for him. … He would have no fun – no internet, no TV and no nothing." *Id.* at 56-57. Father stated that after the incident on Friday, "we went to sleep. We left early. We went Saturday morning and drove 13 hours, and the next day, early morning, I called [Mother] and informed her of the situation." *Id.* at 57. Father testified Mother "expressed that my tactics were too aggressive," and she asked Father to return Child to her at that time, which he did. *Id.* Father testified Mother had previously filed PFA petitions on behalf of Child, and all had been dismissed. *See id.* at 58–59.

On cross examination, Father admitted that when he grabbed Child by the back of the neck to pull Child to the side he applied pressure, and that

he slapped Child after Child lied to him. He further stated he had taken the tablet from Child and had not returned it to him. *See id.* at 60–61.

On redirect, Father testified he slapped Child across the mouth with his fingers "one time," that Child did not fall down, and that Child then admitted to using the Kindle inappropriately. *Id*. at 61.

Following the testimony, the court heard argument by Mother's counsel, the GAL, and Father, the trial court made the following determination:

> There is no question in my mind that [Child] was slapped by his father. There is no question in anyone's mind about that, or should be, because [Father] has indeed admitted that he slapped his son when he was not being truthful. That may be inappropriate punishment, but I do not find that it meets the definition of abuse under the PFA statute.

N.T., 8/24/2016, at 66. The trial court issued an order on the record, finding that Mother had not met her burden and dismissing the PFA action. *See id.* at 69. A written order was entered on August 26, 2016, and Mother then filed a motion for reconsideration, which was denied by the trial court on September 21, 2016. On that same date, September 21, 2016, Mother filed this appeal.[5]

_____

[5] Mother filed a Pa.R.A.P. 1925(b) statement with the notice of appeal, as required by Rule 1925(a)(2)(i).

Mother first argues that "[t]he trial court misapplied the law when it found that the evidence did not meet the definition of abuse under the [PFA] Act." Mother's Brief at 8. Mother argues that

> [w]hile the trial court indicates that [it] found [Father] more credible, the case is not about credibility. The evidence presented by all the parties is not in dispute – [Father] grabbed Child and struck him. [Father] admitted that he grabbed Child by the back of his neck and applied pressure, and that he slapped his son across the face. [Mother] stated that Child did not have the bruises when he left for the vacation with [Father] but that she observed them upon his return. At the hearing, [Father] attempted to explain away the bruising as having been caused by football practice. However, Child had not played football that week due to his out-of-state vacation with [Father] and [Father] never mentioned observing bruises on the Child during the week-long vacation. Photographs showing bruises to Child's neck were presented as exhibits during the hearing.[6] Moreover, Child stated that the bruises were caused by [Father] when he applied pressure to his neck and caused him substantial pain. It is averred that [Mother] met her burden of showing injury as defined by the PFA Act and the trial court misapplied the law by not finding abuse.

Mother's Brief at 9-10.

The principles that guide our review are well settled. In a PFA action, we review the trial court's legal conclusions for an abuse of discretion or an error of law. *Boykai v. Young*, 83 A.3d 1043, 1045 (Pa. Super. 2014), *quoting* *Stamus v. Dutcavich*, 938 A.2d 1098, 1100 (Pa. Super. 2007)

---

[6] The notes of testimony of the August 24, 2016, PFA hearing do not reflect that any physical exhibits were admitted at the hearing, and there are no exhibits included in the certified record. The notes of testimony do reflect that Mother showed photographs that were on her cell phone in court. *See* N.T., 8/24/2016, at 13–15.

(citation omitted)). We defer to the credibility determinations of the trial court as to witnesses who appeared before it. *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999)).

Section 6107(a) of the PFA Act provides "the plaintiff must prove the allegation of abuse by a preponderance of the evidence." 23 Pa.C.S. § 6107(a). "The preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Ferri v. Ferri*, 854 A.2d 600, 603 (Pa. Super. 2004).

The PFA defines "abuse" in pertinent art, as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury ….

(2) Placing another in reasonable fear of imminent serious bodily injury.

…

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

23 Pa.C.S. § 6102(a)(1),(2), and (4). The Child Protective Services Law (CPSL),[7] referenced by Section 6102(a)(4), **supra**, defines "child abuse" as "intentionally, knowingly or recklessly doing any of the following: … (1) Causing bodily injury to a child through any recent act or failure to act. … (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6102(b.1)(1), (5). The CPSL defines "bodily injury" as "impairment of physical condition or substantial pain." 23 Pa.C.S. § 6303(a).

Mother argues that "the existence of bruises" and "prescribed pain medication" establishes that Child suffered "bodily injury," pursuant to subsection 6102(a)(1) of the PFA. Mother's Brief at 10. She further argues that Child's testimony that he no longer wishes to see Father due to fear he will again be subjected to physical injury proves abuse as defined in subsection 6102(a)(2). **See id.** at 11. Mother also maintains Father's actions of "grabbing Child by the neck hard enough to leave bruises, … were, at the very least, reckless," and causing Child "enough pain to be taken to see a doctor and [have] prescribed pain medication" establish abuse as defined in subsection 6102(a)(4). **See id.** at 11–13.

In support of her position, Mother relies on **Miller ex rel Miller v. Walker**, 665 A.2d 1252 (Pa. 1995). In **Miller,** this Court upheld a PFA

---

[7] **See** 23 Pa.C.S. §§ 6301–6386.

order entered pursuant to subsection 6102(a)(1), against a father who used a board to spank his son, and grabbed his son's upper arm, causing bruises on his son's leg and arm. Mother maintains "the injuries suffered by Child are abuse as defined by the Superior Court in **Miller**." Mother's Brief at 14.

Here, the trial court, in its opinion, explained its decision, stating:

> [W]e found Father to be more credible than Mother and son. Indeed the guardian *ad litem* noted credibility issues with respect to the son.[8] Further, the guardian *ad litem* noted that this was clearly not a case appropriate for relief under the Protection From Abuse Act. We agreed. This is an instance of Father disciplining his son for accessing "inappropriate content" on the internet. It is not abuse. Mother would have us grant relief based on one slap, which under the circumstances of the son's misbehavior, was clearly understandable even if arguably inappropriate.

Trial Court Opinion, 10/18/2016. Our review reveals no abuse of discretion.

Although Mother frames her argument as a claim that the trial court erred in finding the evidence insufficient to grant her PFA petition, Mother's argument essentially asks this Court to reweigh the evidence. For instance, she argues that Father "attempted to explain away the bruising as having been caused by football practice,"[9] that "Child testified that he no longer

---

[8] Following the presentation of testimony, when trial court heard argument, the GAL informed the court that she had met with Child on two occasions and had talked to him on the morning of the hearing, and the first time she had heard that Father allegedly struck Child twice was when Child testified in court. **Id.** at 63.

[9] Mother's Brief at 10.

wishes to see Father due to fear that he will again be subjected to physical injury,"[10] and "Child was in enough pain to be taken to see a doctor and was prescribed pain medication."[11]

Contrary to Mother's argument, this case **is** about credibility. In **Miller, supra**, the trial court found the testimony of the mother and children to be credible and the testimony of the father not credible. **See Miller**, 665 A.2d at 1255. On appeal, this Court found the trial court "acted properly in assessing the credibility of the witnesses, and the evidence supports the trial court's finding." **Id.** at 1256.

Here, the trial court weighed the evidence presented by the parties, and determined Mother had **not** met her burden to show by a preponderance of the evidence that Father's action constituted abuse as defined in the PFA Act. Father testified that he "pulled [Child] aside and talked to him … and when he lied to me, I did strike him … one time, and he never fell down [, and] I never hit him again." N.T., 8/24/2016, at 56. The trial court opined that it found Father more credible than Mother and Child, that "Mother would have us grant relief based on one slap," and that "the testimony was very clear that this was not a case of abuse requiring relief under the [PFA] Act." Trial Court Opinion, 8/18/2016, at 1–2. Based on

---

[10] **Id.** at 11.

[11] **Id.** at 13.

our review, we find the trial court's credibility determinations were not unreasonable nor an abuse of discretion. As we have stated, we defer to the court's credibility determinations. **See Raker, supra**. Accordingly, Mother's first issue warrants no relief.

In the second issue raised in this appeal, Mother asserts "the trial court erred as a matter of law by implicitly placing a higher burden of proof on [Mother] than that which is supported by the PFA Act."[12] Mother's Brief at 4, 15. Mother claims:

> The transcript clearly shows that the trial court viewed this matter as essentially a custody action. In fact, the court went so far as to lecture both parties as to the need for co-parenting counseling and that to characterize granting a PFA Order in these circumstances as "micromanaging." (Tr. 67). The trial court then told [Mother] that her best relief would come from filing a custody petition in the Court of Common Pleas of Dauphin County. (Tr. 68).

Mother's Brief at 15.

Mother argues that "by viewing this matter as essentially a custody hearing, the [c]ourt changed the level of proof that was required for the entry of an Order and required that [Mother] establish more significant

_____

[12] We note that Mother did not raise this issue in the concise statement she filed concomitantly with the notice of appeal, **see** Pa.R.A.P. 1925(a)(2)(i), did not file a supplemental concise statement, and the trial court did not address the issue. **See** Mother's Concise Statement, filed 9/21/2016. Nonetheless, to the extent this issue relates to Mother's first issue challenging the trial court's determination that she failed to establish "abuse" under the PFA Act by a preponderance of the evidence, we address the issue.

abuse than would have been required between two persons sharing a different familial relationship." Mother's Brief at 17. Mother claims the result would have been different if this action had been between two adults. *Id.* Mother asserts: "To deny a petition, where otherwise sufficient evidence of abuse has been presented, merely because [the] victim is a child and the abuser is the parent, is an example of disparate treatment and barred by the Equal Protection Clause of the Constitutions of the United States and Pennsylvania." *Id.* Mother maintains "[t]he focus below should have been on the fact that abuse occurred and not whether the parties were subject to a custody order." *Id.* We find no merit to this argument.

Relevant to Mother's argument, the trial court, at the conclusion of the PFA hearing, opined that both Father and Mother may "need some co-parenting counseling," and further addressed the parties, stating:

> You have 12 year old tomorrow, and if you don't address the concerns, and I don't doubt that he doesn't want to see Father right now, and, frankly, Father, you shouldn't push it. If I wanted to micromanage this, I could grant the order, or I could do some kind of holding in abeyance type situation. I don't see any reason to do that today, because I don't think [Mother] has met her burden. That doesn't mean, Father, that you should just barge in there and say I want my fifty-fifty, because your son obviously doesn't want it. …
>
> … This is in my opinion another case where there may have been some inappropriate action, but the Protection From Abuse Act is woefully unable, nor should it address these circumstances.

And if Mother doesn't give you any time with [Child] between now and the end of September, well, you can go back to Court in Dauphin County.[13] … You have taken a step back in many ways as a result of this action in Georgia where you did not act appropriately and appropriately apologize.

But all things considered, I have no choice, I don't believe, under the law or the facts of this case, but to enter this order:

AND NOW, this 24th day of August, 2016, following a hearing on Plaintiff's Petition for Protection From Abuse, we find that Plaintiff has not met her burden, and consequently the action is dismissed.

N.T., 8/24/2016, at 67–68.

Based on our careful review of the record and the trial court opinion, we are satisfied that the trial court used the appropriate standard when it declined to find "abuse" under the PFA Act. We find the trial court's advice to the parties to seek relief in Dauphin County court in the event of disputes regarding the custody order does not undermine the trial court's proper assessment of the evidence under the PFA Act. It was the trial court's determination that Father was more credible than Mother and Child, without regard to any custody issue, upon which the trial court found insufficient evidence of parental abuse. Therefore, no relief is due.

Accordingly, we affirm.

Order affirmed.

---

[13] The parties' custody order is from Dauphin County. **See** N.T., 8/24/2016, at 59.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/27/2017