J-A07034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| N.P., FILING ON BEHALF OF MINOR CHILD C.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| G.B. | : | |
| | : | No. 1994 MDA 2016 |
| Appellant | | |

Appeal from the Order Entered November 8, 2016
In the Court of Common Pleas of Luzerne County Civil Division
at No(s):  201609880

BEFORE:   PANELLA, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                     **FILED APRIL 26, 2018**

G.B. ("Father") appeals from the order entered by the Court of Common Pleas of Luzerne County, granting the request of N.P. ("Mother") for the entry of a final protection order pursuant to the Protection from Abuse Act (PFA) against Father on behalf of the parties' minor daughter, C.P. ("Child"), born in February of 2010.  After careful review, we affirm.

The certified record reveals the following factual background:  Father and Mother are unmarried and do not reside together.  Mother has primary physical custody of Child and the parties have a custody arrangement for Father to have Child on Sunday overnight until Monday at noon as well as on Thursdays until 4:00 p.m.  The parties had made an additional agreement during the school year wherein Mother would pick up Child every other Friday from school and return her to Father's home by dinner on Sunday.

_____

* Former Justice specially assigned to the Superior Court.

On September 22, 2016, Mother filed a petition for a PFA order against Father on behalf of Child after Mother was notified by the Victim's Resource Center of a report from Child's school principal indicating that school personnel had witnessed Father threatening to beat six-year-old Child because she had wet herself at school. The Honorable Thomas F. Burke, Jr. issued a temporary PFA order which was scheduled to expire upon a further court order.

On November 9, 2016, the parties proceeded to an evidentiary hearing before the Honorable Tina Polachek Gartley. Mother testified that in addition to the report of Father's threats towards Child at school, Father had been abusive towards Child on other occasions. In particular, Mother recalled a past instance where she had called Father to her home to help Child with her homework, and Mother stepped outside the home briefly to smoke. When she returned, Child told Mother that Father had slapped her in the face. Mother observed a visible red mark on Child's face and documented this injury with a photograph, which was entered as an exhibit at the hearing.

Mother also testified that Child had persistent incontinence problems that seemed to coincide with the weekends where she was getting picked up by Father. Mother noted that Child's last accident was on the day she went with Child to report the aforementioned incidents. Since contact ceased between Child and Father, Mother indicated that Child is no longer was having incontinence issues and has improved attitude and attention. Mother testified that she fears for Child's safety when Child is in Father's custody.

Mother also presented the testimony of Meredith Stevens, a certified nurse at the elementary school where Child is enrolled. Ms. Stevens testified that Child had been having regular difficulty with incontinence during school and Child wet herself on a daily basis. As school nurse, Ms. Stevens was required to contact Child's parents to address this problem. When Father arrived at the nurse's office to pick up Child on September 16, 2016, Ms. Stevens indicated to Father that she could understand his frustration with Child's incontinence. Father responded that he was "beyond frustrated … and could choke the living shit out of [Child]." Hearing, 11/9/16, at sheet 4.[1] Child came out of the bathroom and Father told Child: "[I] should put you over my knee and spank you right now." *Id*.

As Ms. Stevens escorted Father and Child out of the school, Father yelled at Child for skipping and screamed "[i]f I see you run again, I will beat your butt right here." *Id*. Ms. Stevens testified that Father's comments made her feel physically sick. She indicated that she was "afraid to send [Child] home that day [as] I felt like we were placing her in danger." *Id*. While Ms. Stevens admitted that she did not see Father physically abuse Child, she saw Father violently slam his car door when he placed Child in the vehicle.

Child also was present at the hearing and was deemed competent to testify *in camera* after a colloquy. Child testified that she was six years old,

---

[1] The transcript in the certified record condenses four transcript pages on a sheet of paper but does not individually number the pages. For the sake of simplicity, we will cite to the numbered sheets.

in first grade, and lives with her mother, her daddy, and her brothers. Child indicated that Appellant lives with his mother and father.

Mother's counsel asked Child specifically about the time when Father came over to help Child with her homework. Child indicated that she remembered that she was having trouble with her homework and stated that Father "slapped me across the face right here that really hurted." Hearing at 6. Child pointed to an area on her face under her eye. Child indicated that, as Father hit her "very hard," she started to cry. *Id*. at 7. In addition, Child recalled that Father would get very angry when she would have accidents at school. When asked to talk about this topic further, she did not respond.

Father testified on his own behalf. When asked about the allegations that he slapped Child's face, Father denied causing the injury documented by Mother, denied hitting Child's eye, and indicated that he has "tapped [Child] on the mouth … when she's gotten mouthy." *Id*. at 8. Father indicated that he had never seen the documented bruise under Child's eye, but asserted that he had seen Child with bumps and bruises and characterized Child as clumsy.

Father denied threatening Child at school and suggested that Ms. Stevens had fabricated her testimony. He explained that he had told his daughter that he was getting tired of her having accidents in school and was worried that the school district would ask him to pull Child out of school due to her incontinence. He also asserted that he told his daughter that she could not run in the halls at school. Father noted for the record that he does not believe he is a danger to his daughter.

At the conclusion of the hearing, the trial court granted a final protection order on behalf of Child, which was set to expire in three years on November 8, 2019. Father filed this timely appeal and complied with the trial court's direction to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

[1] Did the trial court abuse its discretion or commit an error of law where it appears from a review of the record that there is insufficient evidence to support the court's findings?

[2] Did the trial court err in failing to find that [Mother] did not prove, by substantial, competent evidence pursuant to section 6107(a) of the Protection from Abuse Act, the allegation of abuse by a preponderance of the evidence?

[3] Did the trial court fail to review the evidence in the light most favorable to [Father] and grant [Mother] the benefit of all reasonable inferences, in determining whether the evidence was sufficient to sustain the court's conclusions by a preponderance of the evidence?

[4] Was the trial court's decision in the instance case contrary to law and in error because it failed to find that Protection from Abuse orders are intended to protect individuals from immediate danger?

[5] Did the PFA court abuse its discretion in sentencing/ordering [Father] from any contact with his natural, minor child for a period of three (3) years?

[6] Was the PFA court's sentence order/excessive?

[7] Did the PFA court err in failing to consider the best interests of the child?

Appellant's Brief, at 4-5.

As an initial matter, we note that Father's brief does not comply with our rules of appellate procedure. Although Father raises seven issues in his statement of questions involved, his brief has one argument section in which he combines all of his claims into one discussion. *See* Pa.R.A.P. 2119(a) (stating that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displaced—the particular point treated therein"). Nevertheless, we will address Father's claims, which can be summarized in challenges to the (1) trial court's finding of sufficient evidence of abuse to warrant the entry of the PFA order and (2) appropriateness of the three-year duration of the PFA restrictions.[2]

Our standard of review of a trial court's decision to grant a PFA order is as follows:

---

[2] In the argument section of his brief, Father contends that the PFA court erred in failing to admit evidence of three prior PFA petitions Mother brought against Father that were not granted, a Pennsylvania State Police criminal record check that showed Father had no criminal history, and alleged letters from county and state agencies indicating that Mother's abuse complaints were unfounded. Father did not raise this evidentiary challenge in his Rule 1925(b) statement or in his Statement of Questions Involved in his appellate brief. The PFA court's 1925(b) order informed Father that "any issue not included in this Statement timely filed and served pursuant to Rule 1925(b) shall be waived." Order, 12/16/16, at 1. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); *In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa.Super. 2017) (stating that "it is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived") (citing *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006)).

[i]n the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. This Court has emphasized that the purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse.

***T.K. v. A.Z.***, 157 A.3d 974, 976 (Pa.Super. 2017) (citations omitted).

Further, with respect to a challenge to the sufficiency of the evidence supporting a PFA order, we are guided by the following principles:

"When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." ***Miller on Behalf of Walker v. Walker***, 445 Pa.Super. 537, 665 A.2d 1252, 1255 (1995). ***See*** 23 Pa.C.S.A. § 6107(a) ("the plaintiff must prove the allegation of abuse by a preponderance of the evidence"). This court defers to the credibility determinations of the trial court as to witnesses who appeared before it. ***Alfred v. Braxton,*** 442 Pa.Super. 381, 659 A.2d 1040, 1043 (1995).

***McCance v. McCance***, 908 A.2d 905, 910 (Pa.Super. 2006).

The PFA Act, 23 Pa.C.S.A. §§ 6101-6122, defines "abuse" in relevant part as follows:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

- 7 -

***

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102.

In a similar case, this Court upheld a PFA order in **Miller** where a father spanked his son with a board and caused bruising on his leg. The daughter saw the contact but did not report it because she was afraid. On another occasion, the father had squeezed this son's harm with enough force that he caused a bruise. The child's mother also indicated that she had seen bruises on the children and noted that the children's father had issues with his temper.

This Court emphasized that the Protection from Abuse Act does not outlaw a parent's corporal punishment of a child, but will "permit a remedy for bodily injury to a family or household member which is inflicted intentionally, knowingly, or recklessly." **Miller**, 665 A.2d at 1258 (citing 23 Pa.C.S.A. § 6102(a)). Moreover, this Court found that "corporal punishment properly inflicted will not produce bodily injury in a child[,] 'corporal punishment' inflicted recklessly or in an enraged manner may result in bodily injury." **Id**. As a result, this Court concluded that the father's infliction of bruises on his son's body constituted "bodily injury" as defined in the definition of abuse set forth in Section 6102(a). **See also B.T.W. ex rel. T.L. v. P.J.L.**, 956 A.2d 1014 (Pa.Super. 2008) (finding that daughter had been abused and

suffered bodily injury when her father had caused bruises on her back from whips with a belt).

In this case, Mother and Child claim that Father hit Child with an open hand under her eye when he was frustrated that Child was having trouble with her homework. Child testified that Father hit her "very hard" and caused a bruise to form under her eye. Hearing, at 7. On another occasion, Child's school nurse, Ms. Stevens, reported that Father threatened to "choke the living shit out of [Child]" as he was frustrated by Child's incontinence. *Id*. at 4. Father showed little anger control as he continued to threaten to spank Child for the accident, screamed that he would "beat [her] butt" for skipping down the hall, and violently slamming his car door shut. *Id*. Ms. Stevens indicated that Father's demeanor and threats made her fear for Child's safety. Moreover, Ms. Stevens confirmed that after Father was prohibited from contact with Child, Child's incontinence problems stopped.

Viewing the record in the light most favorable to Mother, we find the record confirms that Father inflicted bodily injury upon Child and engaged in a course of conduct that placed Child in reasonable fear of sustaining bodily injury. Accordingly, we conclude that the trial court did not abuse its discretion in finding Father abused Child under Section 6102(a).

Appellant also contends the trial court erred in ordering the PFA order to remain in effect for three years. However, Appellant did not preserve this challenge by filing a motion for reconsideration in the lower court. "Issues not raised in the lower court are waived and cannot be raised for the first time on

appeal." Pa.R.A.P. 302(a). Accordingly, we decline to review this claim further.[3]

As we conclude that Appellant's arguments either lack merit or are waived, we affirm the lower court's order.

Order affirmed.

Judge Panella joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/26/18

_____

[3] Appellant has a remedy in the Court of Common Pleas with appropriate appellate rights. Section 6108(d) of the PFA Act states that a "court may amend its order or agreement at any time upon subsequent petition filed by either party." 23 Pa.C.S.A. 6108(d). Section 6117(a) clarifies that "modification [of a PFA order] may be ordered after the filing of a petition for modification, service of the petition and a hearing on the petition." 23 Pa.C.S.A. § 6117(a).