J-A17003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JASON M. PALAMAR O/B/O V.I.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEILA F. PALAMAR | : | |
| | : | No. 311 EDA 2021 |
| Appellant | : | |

Appeal from the Order Entered January 21, 2021
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2021-PF-0041

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED SEPTEMBER 7, 2021**

K.F.P. ("Mother") appeals from the order granting a petition for protection from abuse ("PFA") filed by J.M.P. ("Father"). Mother contends the evidence did not support a finding of abuse. We affirm.

Father and Mother are legally married but separated. They have one child, V.P. ("Child"), and share custody. On January 12, 2021, Father filed a PFA petition against Mother, seeking protection for both himself and Child.[1] A

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This is the first PFA petition filed against Mother, but not the first PFA petition involving the parties. Mother had previously filed a PFA petition on November 5, 2020, against Father for both herself and Child. The parties reached an agreement where Mother would withdraw the petition after certain conditions were met. Father filed a petition seeking enforcement of the agreement, which the trial court granted. This Court affirmed. **See _K.F.P. OBO Minor V.I.P. v._**

_(Footnote Continued Next Page)_

temporary PFA was issued, *ex parte*, that same day. On January 21, 2021, after both parties appeared *pro se* at a hearing, the court entered a PFA order against Mother with Father as the named protected person. At the hearing, Father agreed Child should not be listed as a protected person. N.T., 1/21/21, at 12.

Father testified about four occasions when Mother appeared at his house. The first occurred in October 2020, when he emailed her to see what medicine she was giving Child for his stuffy nose. Father expected an email response, but Mother arrived at his house with the over-the-counter medicine. *Id.* at 22. In the second incident, in November 2020, Mother arrived at Father's house to pick up Child. *Id.* Father testified it was his custody weekend and, when he did not allow her to have Child, she protested outside his home. *Id.* She held a sign that "said something along the lines of 'Tell your neighbor to give me my son back.'" *Id.*

Father also testified about a third incident, in December 2020, in which Mother dropped off Child at his house with his parents at 7:00 p.m. and remained in her car outside his home for almost 30 minutes, until he returned from work. *Id.* at 19. He saw Mother's car when he arrived home, and he got out his phone to record her. *Id.* As soon as he got out of his car, she "took off down the road." *Id.* He walked to the end of the block and, instead of turning

---

*J.M.P.*, 2334 EDA 2020 (Pa.Super. filed June 1, 2021)*.* Mother filed a Motion for Reconsideration, which this Court denied.

left out of the neighborhood, she "abruptly turned right and drove right towards [him]." *Id.* at 19-20. He stated that he turned and walked back to his house and she "slowly followed [him] in her car to [his] house." *Id.* at 20.

On a fourth occasion, in January 2021, as Father was leaving for work at 5:50 a.m., he saw Mother sitting in her car outside his home. N.T., 1/21/21, at 16. She said she was there to pick up Child, but he expected her to pick Child up from daycare at 4:00 p.m. that afternoon. *Id.* at 16-17. He acknowledged she had emailed the night before to make a different pick-up arrangement, but he did not respond. *Id.* at 17. Father testified that he was "now . . . fearful where I wasn't before" and stated he believed she would physically abuse him. *Id.* at 14-15. After Father's testimony the court stated, "Okay. It seems to me like you are a little nervous." *Id.* at 23.

Mother testified and agreed that she was at Father's house on the occasions mentioned but disagreed with Father's characterization of events. She believed that Father, not his parents, was to be present for all custody times. She also said that he had to always provide her a right of first refusal if Father was not with Child or Child was not in daycare.

The court credited Father's testimony and granted the PFA. It found Father established that Mother "knowingly engag[ed] in a course of conduct or repeatedly commit[ed] acts toward another person, including following the person without proper authority under circumstances which place the person

in reasonable fear of bodily injury." *Id.* at 37. Mother filed a timely Notice of Appeal.[2]

Mother raises the following issues:

1[.] Did the event(s) that prompted [Father's] filing of the protection from abuse petition, by a preponderance of evidence, rise to the level of abuse defined by the Protection from Abuse Act/law?

2[.] Did the trial court fail to thoroughly consider the case facts, available evidence and allow all parties to be heard, prior to ruling in favor of [Father]?

3[.] It is in the interest of justice to set aside the final protection from abuse order dated January 21, 2021.

Mother's Br. at 4 (answers omitted).

We will address Mother's first and third issues together, because in both she contends that Father did not present sufficient evidence to support the PFA order. Mother argues Father filed the PFA petition in retaliation because she filed a petition for contempt in the custody proceeding. She argues Father's testimony "did not rise to the level of abuse defined by the act." *Id.* at 8 (citation omitted). She argues the case is similar to ***Ferri v. Ferri***, 854 A.2d 600 (Pa.Super. 2004), where this Court reversed an order granting a PFA petition because the petitioner had not presented sufficient grounds to support

_____

[2] Mother requested a transcript from the final hearing but failed to pay for it and did not respond to the trial court's orders in January and February 2021, requiring payment. On March 1, 2021, the Superior Court issued an order requiring Mother to pay the costs of the transcripts no later than March 12, 2021, and warned that failure to pay would result in the appeal's dismissal. Mother paid for the transcript on March 5, 2021.

the PFA order. *Id.* at 8-9. She argues she was at Father's house to exercise her custody rights and that, when she picketed out front of his house, the police confirmed it was not harassment or any criminal offense. She notes there were no threats or contact between the parties and Father was not present when Mother stayed in the car after dropping Child off with Father's parents. She argues Father was not afraid of bodily harm.[3]

The definition of "abuse" in the PFA Act includes "knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury," when such conduct occurs "between family or household members, sexual or intimate partners or persons who share biological parenthood." 23 Pa.C.S.A. § 6102(a)(5).

To obtain a PFA order, the petitioner must prove the allegation of abuse by a preponderance of the evidence. 23 Pa.C.S.A. § 6107(a). The "preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, [enough] to tip a scale slightly." *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa.Super. 2020) (quoting *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004)) (alteration in original). To determine whether the evidence

_____

[3] Mother also claims the court did not allow her to present relevant evidence. However, she does not specify what evidence the court failed to allow her to present and does not support the argument with case law. She therefore waived this argument. *See* Pa.R.A.P. 2119; *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 92, 93 (Pa.Super. 2007) (finding claims waived where appellant did not cite place in record where it was raised or any relevant authority).

supported the PFA order, we review the evidence in the light most favorable to the petitioner and defer to the trial court's credibility determinations. **Id.** (citing **K.B. v. Tinsley**, 208 A.3d 123, 128 (Pa.Super. 2019)).

Here, the trial court found Mother's uninvited and unannounced visits constituted a course of conduct that caused reasonable fear in Father. The court stated Mother's actions were escalating and it was reasonable to be concerned that she had "no boundaries on her behavior":

> There is an existing custody order. The order, entered in Montgomery County, allowed the parties equal times of physical custody of the child. It was amended on January 6, 2021, to provide that the parties would offer right of first refusal to take care of the child when the other party was unable to watch the child during his/her own custodial time.
>
> There was some testimony from Father which I instantly disregarded, and did not ask Mother for testimony concerning these allegations. Father, who was seeking the PFA, testified that Mother hit him about a year and a half ago. I disregarded this because of its remoteness in time, and lack of any evidence of injury or attempt to injure. He also testified that she came from a "bad family." . . .
>
> I disregarded this evidence as well, although Mother had not objected, because it was clearly hearsay. It is the duty of the judge to disregard improper evidence, especially where the parties do not have the benefit of counsel.
>
> . . .
>
> The testimony of both parties was essentially in accord, at least as concerned the multiple visits.
>
> Both parties agree to the essentials, the dates and times when Mother appeared, uninvited, at Father's house. There is some disagreement as to the details of behavior, such as which party acted with a show of menace toward the other. No doubt the encounters were mutually unpleasant.

Pursuant to [the] Protection from Abuse Act, "abuse" is defined, in part, as follows:

"Abuse." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury...

23 Pa. C.S.A. § 6102.

Mother's repeated appearances at Father's house are not authorized. The custody order had provided for her custody pick up to be at day care. Mother agrees that that is what the order provides.

The final question is whether the unauthorized course of conduct was under circumstances which place the person in reasonable fear of bodily injury.

Father testified to his fear, and we find his testimony to be credible. "Now I am fearful where I wasn't before." N.T. p. 14, line 25.

When asked if he believed she would hurt him, he responded, "I believe she will, yes".

We believe his fear to be reasonable. Mother is attempting to exercise what she believes to be her custody rights by repeatedly harassing Father at his home, and by showing up without invitation, agreement, or announcement. She raised the bar by picketing his home, [and] even though such action might not have violated township ordinance[, i]t is reasonable to be concerned that the Mother has no boundaries on her behavior.

The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse. *E.K. v. J.R.A.*, 237 A.3d 509 (Pa.Super. 2020), *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa.Super. 2008). To that end, the objective is to determine

whether the victim is in reasonable fear of bodily injury. **See Raker v. Raker**, 2004 Pa. Super. 107, 847 A.2d 720, 725 (2004). Past acts play a significant role in making such a determination. **See E.K.**[, 237 A.3d] at 519 (citing **Raker**, [847 A.2d] at 725).

If Father is denying her custody which she believes to be court ordered, she must seek relief through the custody court and not by self-help.

Mother believes that she was entitled to these behaviors because she was attempting to enforce the custody rights given to her by a custody order entered in Montgomery County.

Mother seemed to be under the mistaken belief that because she believed herself to be the lawful custodian of the child at the times of her appearance at Father's home, that she was acting within the law. She seems to believe that the fact that she did not violate any other laws meant that she was immune from a finding that she had committed "abuse" under the statue.

Notably, the intent of the alleged abuser is not relevant to our determination. **See Buchhalter**, [959 A.2d] at 1263.

If Father repeatedly violated provisions of the custody order, Mother's actions were clearly unsuccessful, and were only repeated to force and intimidate the Father into compliance with the order.

We did not evaluate which party was entitled to custody of the child at these times, because if there are violations of the custody orders, the appropriate relief is in the court where that originated, Custody court.

Trial Ct. Op., filed Apr. 21, 2021, at 8-13 (some citations to record omitted).

Viewing the evidence in the light most favorable to Father, and deferring to the trial court's factual findings, we conclude there was sufficient evidence to find Father proved by a preponderance of the evidence that Mother engaged in conduct that placed him in fear of bodily injury. Mother repeatedly came to

Father's home when not invited, remained outside for various amounts of time, and picketed. Father testified he had fear of injury now, where he did not before. It was not an abuse of discretion for the court to find this fear reasonable due to Mother's escalating behavior.

*Ferri* is inapposite. There, a trial court granted the PFA petition filed by a child's father on behalf of the child and against the child's mother. The PFA order was based on testimony from a neighbor that she saw the child's mother slap the child and the child said the slap was "hard." *Ferri*, 854 A.2d at 601-02. The record did not contain evidence of an actual injury. *Id.* at 604. We determined that the evidence did not support the PFA, because there was no evidence of an actual injury, the record was devoid of evidence the alleged victim was in reasonable fear of imminent bodily injury, and the father did not argue the child was in fear. In contrast, here, Father testified he was afraid, and the testimony supported the court's finding that Father's fear was reasonable.[4]

---

[4] Mother also claims the proceedings "should never have gone past the *ex parte* hearing" and the court erred when it issued the temporary order. However, as the court then conducted a full hearing, and issued a permanent order, any claim challenging the temporary PFA order is moot **See Ferko-Fox v. Fox**, 68 A.3d 917, 920 (Pa.Super. 2013) (noting an issue relating to the propriety of a temporary PFA order is moot where the trial court entered final PFA order unless the issue is of great public importance, is capable of repetition but likely to evade review, or is likely to cause continuing detriment to a party).

In her second claim, Mother claims the court failed to thoroughly review the incidents. She claims that Father stated Mother did not try to speak with him on the night of the December 2020 incident, but the communications from that night establish she did. She further notes that Father claims she was harassing him when she parked near his home, but admitted he was at work while she was parked there.

Mother has waived this claim because she failed to support it with any case law or citations to the record. *See* Pa.R.A.P. 2119; ***Bombar***, 932 A.2d at 93 (finding claim waived where appellant did not cite any relevant authority). Furthermore, the examples Mother cites regarding the court's failure to review the evidence do not accurately portray Father's testimony. Father testified that Mother did send an email in December, but when the court asked if she wanted to talk to him, he stated, "No. We don't communicate. Everything we do is through electronic messaging." N.T. 1/21/21, at 21. Father did not say that Mother did not contact him that night. Rather, he said she emailed him, but they did not otherwise communicate that evening. That Father was not home while she was parked there does not negate a finding of harassment, where she remained outside for half an hour, then, after he returned home, followed him in her car.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2021