**Richard L. FERRI, Appellee,**

v.

**Pamela Mychak FERRI & J.F.**

**Appeal of Pamela Mychak FERRI.**

Superior Court of Pennsylvania.

Argued April 24, 2004.
Filed July 12, 2004.

Janice R. Yaw, Williamsport, for appellant.

James R. Rosini, Shamokin, for appellee.

Before: BENDER, McCAFFERY, and TAMILIA, J.J.

OPINION BY McCAFFERY, J.:

¶ 1 In this appeal, we have been asked by Appellant, Pamela Ferri, to decide whether the trial court properly granted Appellee Richard Ferri's petition for Protection From Abuse ("PFA"), entered in the Northumberland County Court of Common Pleas.[1] Specifically, we must determine whether the event which prompted the filing of the petition, by a preponderance of the evidence, rises to the level of abuse defined by the Protection From Abuse Act[2] (the "Act"). Under the circumstances of this case, and after a thorough review of the record and the applicable law, we hold that it did not. Accordingly, we reverse.

¶ 2 The relevant facts and procedural history of this case are as follows. Appellant and Appellee are the biological parents of one daughter, N.F., born April 25, 1997. Appellant has another, older biological daughter, J.F.[3] The parties separated and Appellant was granted interim custody of N.F. on April 8, 2003. Appellee now lives across the street from Appellant. On August 25, 2003, Appellee filed a PFA petition against Appellant and J.F., seeking protection for N.F. At the September 2, 2003 hearing conducted to address the allegations of abuse, testimony was taken from Appellant, Appellee and other witnesses.

¶ 3 One such witness was Mrs. Walling, a neighbor. Mrs. Walling testified that she lives at a distance three row houses and an alley away from Appellant. (N.T. 9/02/03 at 12, 22). There is a street lamp almost in front of her house and another one in front of Appellant's. (*Id.* at 14). She testified that on August 4, 2003, she was watering her front porch flowers at about 9:00 p.m. when she saw Appellant and N.F. arrive from "somewhere". (*Id.* at 6). Appellant was trying to get N.F. into her house. Mrs. Walling could see Appellee in the window of his house. N.F. saw him as well and started waving and yelling, "Daddy", trying to get her father's attention. Mrs. Walling testified that Appellant slapped N.F., while the child continued yelling, "Daddy, daddy, come and get me." (*Id.* at 6–7).

¶ 4 Mrs. Walling testified both that she saw and heard the slap. (*Id.* at 16, 23). Mrs. Walling called Appellee and told him

---

1. The order was entered against Pamela Mychak Ferri only.

2. 23 Pa.C.S. §§ 6101–6117.

3. The PFA order gives J.F.'s date of birth as December 28, 1987.

this. Mr. Walling called the county's Children and Youth Services ("CYS"). (*Id.* at 19). When the representatives from CYS arrived at Appellant's home that night, they were unable to interview N.F. (*Id.* at 20). Appellant had custody of N.F. the next day, August 5, 2003. (*Id.* at 42).

¶ 5 Appellee had custody of N.F. on August 6, and he took her to a doctor. The medical examination revealed no bruising. *Id.* at 42, 48. The medical record states "[N.F.] indicates that her mother slapped her hard on the face 'the other night' ".[4] The CYS caseworker testified that when she subsequently interviewed N.F., the child's story remained consistent with the statements contained in the medical record. (*Id.* at 32–33).

¶ 6 The court entered a PFA order against Appellant but not against J.F., and the order also changed the then-current custody status by granting Appellant supervised visitation with N.F. for two nights per week and every other weekend.

¶ 7 Appellant raises the following issues for our review:

I. WHETHER THE TRIAL COURT ERRED IN ENTERING A PROTECTION OF [SIC] ABUSE ORDER AGAINST THE APPELLANT AS THERE WAS NO EVIDENCE SHE ATTEMPTED TO CAUSE OR INTENTIONALLY, KNOWINGLY OR RECKLESSLY CAUSED BODILY INJURY, SERIOUS BODILY INJURY, THREAT OF SERIOUS BODILY HARM TO THE SUBJECT CHILD NOR WAS THERE ANY EVIDENCE THE CHILD WAS IN REASONABLE FEAR OF IMMINENT SERIOUS BODILY INJURY FROM THE APPELLANT.

II. WHETHER THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE APPELLANT'S ACTIONS CONSTITUTED ABUSE AS DEFINED BY STATUTE, TO WIT, 23 Pa.C.S. § 6102(a).

III. WHETHER THE TRIAL COURT ERRED BY IMPROPERLY ADMITTING AND CONSIDERING HEARSAY STATEMENTS ALLEGEDLY MADE BY THE CHILD IN A MEDICAL RECORD WHICH FAR EXCEED ANY VALID EXCEPTION TO THE HEARSAY EVIDENCE RULES.

(Appellant's Brief at 6).

¶ 8 We begin by observing our pertinent standard of review. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. *Burke ex rel. Burke v. Bauman,* 814 A.2d 206, 208 (Pa.Super.2002).

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.

*Miller on Behalf of Walker v. Walker,* 445 Pa.Super. 537, 665 A.2d 1252, 1255 (1995).

¶ 9 Appellant's first two arguments are essentially claims that the evidence was insufficient to establish that the inci-

---

**4.** Appellant argues the entire record is hearsay and should have been excluded. We note, however, that the portion of the record which contains statements made for purposes of medical diagnoses or treatment is admissible as a hearsay exception. *See* Pa.R.E. 803(4).

dent arose to the level of abuse as defined in the Protection From Abuse Act[5] (the "Act"). Section 6107(a) of the Act provides "the plaintiff must prove the allegation of abuse by a preponderance of the evidence". The preponderance of evidence standard "is defined as the greater weight of the evidence, *i.e.,* to tip a scale slightly is the criteria or requirement for preponderance of the evidence. *Commonwealth v. Brown,* 567 Pa. 272, 786 A.2d 961, 968 (Pa.2001), *cert. denied,* 537 U.S. 1187, 123 S.Ct. 1351, 154 L.Ed.2d 1018 (2003)." *Raker v. Raker,* 847 A.2d 720, 724 (Pa.Super.2004). The Act defines abuse as follows:

> (i) intentionally, knowingly, or recklessly causing bodily injury; (ii) placing another in reasonable fear of imminent bodily injury; (iii) infliction of false imprisonment; (iv) physically or sexually abusing minor children; or, (v) knowingly engaging in a course of conduct or repeatedly committing acts towards another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S.A. § 6102(a).

¶ 10 In entering the PFA order at issue, the trial court accepted the testimony of Mrs. Walling as credible. In addition, the trial court relied on N.F.'s statement, contained in her medical record, that she had been slapped "hard" on the face. The trial court then misguidedly equated the action of a slap with the consequence of an injury.[6] We do not believe that a finding the child received a hard slap leads inexorably to the conclusion that she *therefore* suffered an injury. Our review of the record

supports this determination. The record of the child's medical examination after the slap states "no bruising".[7] Moreover, Mrs. Walling testified that N.F. was not crying after the slap, but instead she "started hollering, Daddy, daddy, come and get me". (N.T. 9/02/03, at 7).

¶ 11 Contrast the evidence here with the evidence in *Miller, supra,* 665 A.2d at 1252, where this Court affirmed the entry of a PFA order. In *Miller,* the evidence disclosed:

> Joshua's testimony established that his father struck him with a board on the leg, and that he (Joshua) experienced pain and developed a bruise from this. Further, Joshua testified as to his father's gripping him on the arm, resulting in bruising in that area. Joshua also testified that he was afraid that his father might do these things to him again. The testimony of Crystal established that she heard Joshua crying after their father took a board into the room with Joshua. Appellee testified that she had observed bruising of her children on prior occasions and that appellant had a history of difficulty in controlling his temper. Photographs allegedly taken the day after the "board" incident and submitted to the court showed the presence of bruises on Joshua's arm and leg.

*Id.* at 1256. On appeal, we determined the above evidence "was clearly sufficient to establish the existence of bodily injury by a preponderance of the evidence." *Id.* Instantly, there is simply no evidence of bruising or crying sufficient to establish the existence of bodily injury.

¶ 12 This Court clearly recognizes that a person need not suffer actual injury to be

---

**5.** 23 Pa.C.S. §§ 6101–6117.

**6.** "[T]he Court exclusively considered the subject child's description of her *injuries* as a hard *slap* ...". Trial Court Opinion, 11/18/03, at 3 (emphasis supplied).

**7.** Plaintiff's Exhibit 1, N.T. Hearing, 9/02/03. *See also* Appellee's testimony that he knew N.F. had not been bruised. (N.T. 9/02/03 at 48).

considered a victim of abuse. *See Fonner v. Fonner,* 731 A.2d 160, 163 (Pa.Super.1999); *DeHaas v. DeHaas,* 708 A.2d 100, 102 (Pa.Super.1998), *appeal denied,* 557 Pa. 629, 732 A.2d 615 (1998). Nevertheless, in those cases where we have affirmed the entry of a PFA order, despite the fact that the victim did not experience an actual injury, the victim was in each case able to demonstrate a *reasonable fear of imminent bodily injury,* pursuant to 23 Pa.C.S.A. § 6102(a)(ii). *Id.* The record here is devoid of any evidence that N.F. was in reasonable fear of imminent bodily injury[8], nor does Appellee argue that she was in fear.

¶ 13 We do not believe the General Assembly intended the Act to tie the hands of parents who may have to discipline their children appropriately. Indeed, the "Act does not outlaw corporal punishment by a parent." *Miller, supra,* 665 A.2d at 1258. This is so, presumably, because most parents understand that if corporal punishment is properly imposed, it will not produce bodily injury. *Id.* As well, we do not believe the Act is to be exploited as a tool in disputed custody matters.[9]

¶ 14 Based upon a careful review of the record and the relevant law, we hold that Appellee failed to prove his allegation of abuse by a preponderance of the evidence, and, accordingly, we reverse this PFA order.

¶ 15 Order reversed. Jurisdiction relinquished.

---

**8.** We are not suggesting that testimony from N.F. herself would be required to demonstrate she experienced reasonable fear of imminent bodily injury. However, the party seeking a PFA order must come forward with *some* evidence of either an injury or reasonable fear of imminent injury.

**9.** We are not implying that was the intent here. Nevertheless, the PFA order did change the custody status.