J-A25010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THOMAS R. BURNS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLINTON R. BURNS | : | No. 1293 WDA 2020 |

Appeal from the Order Entered October 28, 2020,
in the Court of Common Pleas of Clarion County
Civil Division at No(s): 874 CD 2020.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: MARCH 8, 2022**

Thomas R. Burns (Appellant) appeals the order denying his request for protection under the Protection From Abuse (PFA) Act. ***See*** 23 PA.C.S.A. §§ 6101-6117.  Appellant brought a petition against his nephew, Clinton R. Burns (Appellee), following a confrontation on the parties' farm.  Appellant argues the trial court erred when it determined that his injury did not constitute a "bodily injury" as set forth by the PFA Act.  Appellant also claims the court erred when it discounted Appellee's prior course of conduct and determined that Appellant was not in reasonable fear of bodily injury.  After careful review, we affirm.

The incident that led to Appellant's PFA petition began with a dispute over water rights on the parties' farm, called Burns Farm.  Appellant co-owns

_____

[*] Retired Senior Judge assigned to the Superior Court.

Burns Farm with his late brother's wife, Wendy Burns. The Burns Farm includes two neighboring homesteads. Appellant resides on one homestead. Appellee (who is Wendy's son and Appellant's nephew) resides on the other homestead with his wife and two children.

Importantly, a water cistern is located on Appellee's homestead. The cistern is owned by Burns Farm, Inc., but is allegedly paid for by Wendy Burns. On September 7, 2020, Appellee was at home when he noticed the water pressure was low. When he investigated the problem, he discovered Appellant's tanker truck was parked at the cistern and was syphoning water via a hose. Appellant was with his adult son, Robert Burns. Appellee approached the truck, with the intention of turning off the hose. The three became involved in altercation about who had the right to take water from the cistern.

Appellant described the altercation in his petition for protection from abuse:

> [M]y son Rob and I were loading water as I have hundreds of times. [Appellee] stomped up to where we were at and started yelling at us to turn off the "Fucking" water. [Appellee] slammed the hinged door that is on the back of tank, into me. [Appellee] then grabbed the 2 foot wrench and closed the valves. [Appellee] started yelling at Rob to turn the water off. [Appellee] was just acting crazy and yelling and swearing at me to get out of there. I asked [Appellee] what he wanted from me. He said that he wanted me to die. [Appellee] then yelled at Rob saying I want your old man to die and you to overdose. He kept yelling to get out of here. [Appellee's] mother Wendy then started down the drive and blocked me with her van. I turned to miss her and went into the yard. [Appellee] then came up and tried

to pull and twist the mirrors off my truck. He was very angry and acted like a maniac. I just left the truck sit and walked away without saying anything.

Appellant's Petition for Protection From Abuse, dated 9/21/20 at 2.

The petition also alleged prior incidents of abuse:

[Appellee] is my nephew and we have had problems for several years which revolves around family settlement and property disputes. It is daily that [Appellee] and his mother have constantly harassed, stalked and now [Appellee] is getting physical with me. He is so irate, explosive and out of control that I am afraid of what he will do next. The incidents are becoming more frequent and severe, and I am asking for the court's help to keep me and my family safe.

*Id.*

Appellant obtained an *ex parte* temporary PFA order under Section 6107(b).[1] The trial court held an evidentiary hearing regarding the final PFA order on October 6, October 14, and October 28, 2020.

At the final hearing, Appellant testified that Appellee hit Appellant with the truck door after Appellee shut off the water to the truck. *See* N.T., 10/6/20 (Day 1), at 10-11, 13, 15. Appellant testified further that after he drove away, Appellee caught up with the truck and ripped the mirrors off. *See id.* at 17. Appellant provided photographs of his cut finger and bruises on his back, arm

_____

[1] Appellant's son, Robert, also obtained a temporary PFA order against Appellee. The court held a consolidated hearing on both of these petitions. The court also denied Robert's petition for a final PFA order. Robert did not appeal that decision. Thus, we limit our review to Appellant's case, and omit the trial court's reference to Robert's case during our citation to the transcript of testimony, *infra.*

- 3 -

and cheek.  *See also* Exhibits 1-3.  Appellant's fiancée also testified that Appellant's injuries became more pronounced over time.

Appellant also testified about his history with Appellee.  In a 2016 incident, the parties argued about performing jobs on Burns Farm.  Appellant testified that the two got into an altercation where "[Appellee] threw me down and sat on me." 10/14/20, N.T. (Day 1) at 19.  Afterwards, Appellant said he went about his business. *Id.*  In 2017, during an argument, Appellant claimed that Appellee told him to "hit me, old man." *Id.* at 20.  In 2018, the parties argued about whether Appellee was allowed to drive a certain vehicle without insurance.  Appellant testified that Appellee "knocked me down and drug me across the driveway…I ended up getting my arm all skinned up." *Id.*  In another incident, Appellant claimed Appellee used his belly to push him, and that Appellee spit on him. *Id.* at 21.  In 2019, Appellant said he got into a dispute with Appellee's wife about using the lawnmower.  Appellant claimed Appellee's wife ran over his foot and that Appellee then slammed him on the ground. *Id.* at 22.  Some of this incident was capture by cell phone video and admitted into evidence. *See* Exhibit 4.

Naturally, Appellee provided a contrary account.  According to Appellee, it was Appellant who initiated the confrontation at the water cistern on September 7, 2020.  Appellee explained that he went to the water cistern to investigate why his water pressure was low. *See* N.T., 10/14/20, (Day 2) at 13.  Appellee testified that he turned off the hose connecting the cistern to the truck, and Appellant attempted to turn the hose back on.  The battle over

the hose caused a buildup of pressure, which then caused the door of Appellant's truck to blow open. *See id*. at 16-18. Appellant lost his hat, and everyone got wet. *Id.* Appellee also testified when Robert and Appellee were in engaged in conversation, Appellant retrieved a screwdriver from the toolbox attached to the truck. *Id.* 19. Appellant allegedly pointed the screwdriver at Appellee and told him to leave his own residence. *Id.* Appellee testified that he only told Appellant that he wanted him dead after Appellant asked him what would make him happy. *Id.* at 20.

Appellee testified that Appellant then drove the truck down the driveway. Unbeknownst to Appellee, his mother (Wendy) was in a van parked at the end of the driveway. Appellant stopped the truck and asked Wendy if she was going to get out of the way. Wendy shook her head no, and Appellant proceeded to drive through Appellee's yard, evidently trying to leave through the front yard. Appellee said Appellant drove his truck into a pine tree and a maple tree. *Id.* at 21-22. According to Appellee, Robert Burns then turned the mirrors and cleared the truck of debris. By that point, the police had arrived.

Regarding the previous incidents, Appellee claims that Appellant was the aggressor. During the 2019 lawnmower incident, Appellee testified that when he arrived at the scene, Appellant was fighting with Appellee's wife, and that he intervened on her behalf. *Id.* at 39-40.

Ultimately, the trial court denied Appellant's request for a final PFA order. Appellant timely filed this appeal. He presents two issues for our review:

1. Did the trial court commit an error of law or abuse its discretion in dismissing Appellant's petition for Protection From Abuse when it determined the totality of the evidence failed to meet the Crimes Code definition of "bodily injury" under 18 Pa.C.S.A. § 2301, and by implication, the definition of "bodily injury" under the Protection From Abuse Act, 23 Pa.C.S.A. § 6303?

2. Did the trial court commit an error of law or abuse its discretion when it determined the September 7, 2020 physical attack by Appellee upon the Appellant, including a series of prior physical attacks over several years, where one such physical attack was captured on video, in August 2019, such that the Appellant was not entitled to relief under the Protection From Abuse Act?

Appellant's Brief at 7 (cleaned up).

In his Brief, Appellant argues these issues contemporaneously. *See* Appellant's Brief at 13-16. Therefore, we discuss them collectively as well. We begin by observing the appropriate standard of review. This Court reviews a trial court's PFA decision for an abuse of discretion.

"An abuse of discretion is more than just an error in judgment, and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will." *Ferko-Fox v. Fox*, 68 A.3d 917, 925 (Pa. Super. 2013). "This Court defers to the

credibility determinations of the trial court as to witnesses who appeared before it." ***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019) (citation omitted). Moreover, we are not entitled to re-weigh the evidence. ***K.B.***, 208 A.3d at 130; ***see also C.H.L. v. W.D.L.***, 214 A.3d 1272, 1276-77 (Pa. Super. 2019).

The PFA Act is designed to shield a protected party from violence, sexual abuse, or other abuse. ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa. Super. 2008) (citations omitted). The PFA Act does not seek to determine criminal culpability; a petitioner is not requested to establish abuse occurred beyond a reasonable doubt, only by a preponderance of the evidence. ***K.B.***, 208 A.3d at 128 (citation omitted); ***see also*** 23 Pa.C.S.A. § 6107(a). The preponderance of the evidence standard "is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***Ferri v. Ferri***, 854 A.2d 600, 603 (Pa. Super. 2004) (citing ***Commonwealth v. Brown***, 786 A.2d 961, 968 (Pa. 2001)).

The PFA defines "abuse," in relevant part, as follows:

> The occurrence of one or more of the following acts between family or household members […]:
>
> ***(1) Attempting to cause*** or intentionally, knowingly ***or*** recklessly ***causing bodily injury,*** serious bodily injury […].
>
> […]
>
> (5) Knowingly ***engaging in a course of conduct or repeatedly committing acts toward another person***, including following the person, without proper authority, under circumstances ***which place the person in reasonable fear of bodily injury***. The definition of this

paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a)(1), (5) (emphasis added).

The crux of Appellant's appeal concerns the definition of "bodily injury." He argues that Appellee caused him bodily injury under Section 6102(a)(1); or, in the alternative, Appellant reasons that Appellee's course of conduct placed him in reasonable fear of bodily injury under Section 6102(a)(5).

The PFA Act does not provide its own definition of "bodily injury" but adopts the definition from the Crimes Code. *See* 23 Pa.C.S.A. § 6102(b) ("Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S.[A.] (relating to crimes and offenses.")).

The Crimes Code provides:

**Bodily injury.** Impairment of physical condition or substantial pain.

18 Pa.C.S.A. § 2301.

In this case, Appellant provided photographic evidence of a cut, scratches, and bruises, and testified to the same. However, the trial court determined that these injuries were relatively superficial and did not meet the definition of bodily injury under 18 Pa.C.S.A. § 2301. In its Pa.R.A.P. 1925(a) opinion, the court refers us to its findings made on the record:

So the first question is, did [Appellee] cause [Appellant's] impairment of a body function or substantial pain […] with regard to this incident on September 7, 2020.

I view impairment of bodily function as something that keeps somebody from functioning the way they normally do, whether it would be ability to walk or talk or to perform activities of daily living.

And there's no evidence that [Appellant] sustained any impairment of body function. [Appellant] was able to go about [his] daily functions. There's no evidence that [he was] not able to.

The other aspect of bodily injury is substantial pain, and although there's testimony about [Appellant] having a cut hand and bruised back he says from the door being pushed against him, that part of the incident didn't prevent [Appellant] from getting in the truck and driving it, getting up and moving about.

I realize that the testimony is that it was several days later that the bruises started to get worse and he really started to hurt a couple of days after that, but I don't believe there's enough evidence to find that he was in pain that was substantial.

[…]

I mean, there's no doubt there's physicality involved in these various incidents in 2018, 2019, belly bumping or whatever you want to call it, head locking and taking to the ground.

I think there was some type of that conduct at the truck on September 7, [2020], an in your face kind of attitude, belly bumping. I don't think [Appellee] is altogether innocent in terms of not engaging in physical contact with [Appellant].

As far as what happened after the truck left the cistern area and [Appellant] drove it down the driveway, there's really not enough for me to find from the videos and the testimony that [Appellee] was hanging off the truck or screaming or trying to break the mirrors. I just don't - - I don't have enough to conclude that that's what he did.

There's no doubt there's been a course of conduct here. There's been a lot of conduct over the years, and it's very unfortunate that the family has to spend three days in court

fighting over this incident, but the history is important to me.

We have [Appellee] taking [Appellant] to the ground and so on, but just like with the September 7, [2020] incident, I don't think any of these previous incidents resulted in bodily injury, and we see [Appellant] getting up and walking away.

I think it's important to consider whether any of these previous incidents involved bodily injury or threats of bodily injury, and I find they did not.

So I cannot conclude [Appellant] was in reasonable fear of bodily injury. I think [Appellant] was in fear of confrontations, but not rising to the level of [him] being hurt to the extent that [he is] going to have [his] body functions impaired or be in substantial pain.

The threats, now, I know one of the major concerns I had when I granted the temporary PFA[] was the statement, I want you to die, [Appellant], but I don't view that as a threat as much as just an anger argument that wasn't of the nature to be a threat of bodily injury or death.

N.T., 10/28/20 (Day 3), at 50-53 (references to Robert Burns' case omitted).

After review, we first conclude that the trial court did not abuse its discretion. Whether one suffered such pain or impairment is a determination within the purview of the trial court, which sits as the finder of fact. **See Commonwealth v. Davidson**, 177 A.3d 955, 958-59 (Pa. Super. 2018) (citing **Commonwealth v. Jorgenson**, 492 A.2d 2 (Pa. Super. 1985), *rev'd. on other grounds*, 517 A.2d 1287 (Pa. 1986) (a jury may infer that twice striking a person across the face causes pain even if there is not testimony of pain)). This Court is not in a position to re-weigh evidence. **K.B., supra.** We will affirm the trial court's decision, so long as it is not manifestly unreasonable. **See Ferko-Fox**, 68 A.3d at 925.

- 10 -

Here, the trial court found that the September 7, 2020 incident at the water cistern was typical of the prior incidents, which involved "belly bumping" and "in your face" verbal confrontations. *See* N.T., (Day 3) at 51.  Although the court concluded that Appellee was not "altogether innocent" of engaging in physical contact with Appellant (N.T., (Day 3), at 51-52), the court did not believe Appellee caused, or attempted to cause, bodily injury.  The court certainly did not believe Appellant's testimony that Appellee chased after the truck and tried to rip the mirrors off.  *See* T.C.O. at 3.  To the extent that the court faulted Appellee with causing Appellant's injuries, the court determined that Appellant's cuts, scratches, and bruises were not significant enough to meet the definition of "bodily injury" as contemplated by the PFA Act.  The record supports this determination.[2]

We similarly conclude the trial court was within its discretion to determine that Appellee's course of conduct did not place Appellant in reasonable fear of bodily injury under Section 6102(a)(5).  Although the trial court recognized the parties' acrimonious history, the court noted that even when the incidents became physical, they never resulted in bodily injury.  Thus, the court concluded that, while Appellee's course of conduct might have placed Appellant in fear of confrontation, it did not place Appellant in fear of

---

[2] For instance, Appellant, age 74, testified that he bruises easily.  *See* N.T. (Day 1) at 13.  When confronted with the photograph of a bruise on Appellant's cheek, Appellee testified that he thought it was just an age spot.  *See* N.T. (Day 2) at 47.

- 11 -

bodily harm. **See** T.C.O. at 3. We do not find this inference to be manifestly unreasonable, either.

We also note that court's primary reason for granting Appellant temporary protection was Appellant's allegation that that Appellee wanted him dead. But after hearing testimony, the court was satisfied that Appellee's statement was not a threat, but a retort to Appellant's question about what would make Appellee happy. The court was satisfied that Appellee had not threatened Appellant's life. In denying Appellant's petition, the court necessarily had to weigh the testimony and evidence and make credibility determinations. We will affirm the court's decision, so long as these determinations are supported by the record. And here, they are.

Our analysis may end here. However, we observe two more points contained in Appellant's Brief – namely, whether Appellee **attempted** to cause bodily injury under Section 6102(a)(1), or whether the court erred for failing to find Appellee placed Appellant in reasonable fear of imminent **serious** bodily injury under Section 6102(a)(2). We conclude that these issues are waived.

First, these issues are too attenuated from the question presented in Appellant's statement of questions involved, let alone his concise statement of matters complained of on appeal. **See** Pa.R.A.P. 2116 ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Indeed, the trial court did not even think to address these points in its Rule 1925(a) opinion. Moreover, Appellant's Brief

mentions these points merely in passing. *See* Appellant's Brief at 14, 16. "It is well-established that failure to development an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal. *C.H.L.*, 214 A.3d at 1276 (citation omitted); *see also* Pa.R.A.P. 2119(a) ("The argument shall be…followed by discussion and citation of authorities as are deemed pertinent.").

Even if we were to consider these points, we would conclude they merit no relief. Under Section 6102(a)(1), abuse is defined as an ***attempt*** to cause bodily injury. Appellant reasons that Appellee's "physical attack" at the water cistern was more than sufficient to meet this statutory requirement, by the preponderance of the evidence. But again, notwithstanding Appellant's wounds, the court did not believe Appellant's account of the incident. Rather, the court concluded that the incident at the water cistern was typical of the parties' prior altercations, which involved "belly bumping" and "in your face" verbal confrontation. These conclusions were not manifestly unreasonable.

Under this Section 6102(a)(2), abuse is defined as the placing of petitioner in reasonable fear of imminent ***serious*** bodily injury. 23 Pa.C.S.A. § 6102(a)(2) (emphasis added). Critically, however, the definition of "serious bodily injury" is different from the definition of "bodily injury." The Crimes Code provides:

> **Serious bodily injury.** Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protected loss or impairment of the function of any bodily member or organ.

18 Pa.C.S.A. § 2301.

As discussed above, the trial court did not find Appellant in reasonable fear of bodily injury. It follows that the court did not find Appellant in reasonable fear under the heightened, serious bodily injury standard.

In sum, we discern no error or abuse of discretion in the court's decision to deny Appellant's request for a final PFA order. The court was within its discretion to conclude that Appellant's superficial wounds did not amount to a "bodily injury" as contemplated by the PFA Act. The court was also within its discretion to conclude that Appellee's prior course of conduct was insufficient to place Appellant in reasonable fear of bodily injury. Insofar as Appellant's argument concerned an attempt to cause bodily injury, or the fear of imminent serious bodily injury, Appellant has failed to preserve these issues.

Order affirmed.

Judge King joins the Memorandum and Judge Colins files a Dissenting Memorandum.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2022

- 14 -