J-S35025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NICOLE MCALLISTER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON BARNES | : | |
| | : | |
| Appellant | : | No. 1058 MDA 2021 |

Appeal from the Order Entered July 9, 2021,
in the Court of Common Pleas of York County,
Civil Division at No(s):  2012-FC-001029-12.

BEFORE:   OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED: MARCH 10, 2022**

Brandon Barnes (Appellant) appeals the order granting the petition filed by his child's mother, Nicole McAllister (Appellee), under the Protection From Abuse (PFA) Act.  **See** 23 PA.C.S.A. §§ 6101-6117.  Appellant claims there was insufficient evidence to support the trial court's determination that he placed Appellee in reasonable fear of imminent serious bodily injury. **See** 23 PA.C.S.A. § 6102(a)(2).  After review, we affirm.

The relevant factual and procedural history is as follows:  The parties share custody of their 12-year-old daughter (the Child).   The incident precipitating Appellee's petition for protection occurred during the parties' custody exchange on June 24, 2021.  Four days after the incident, Appellee filed a PFA petition, and obtained an *ex parte* temporary order the same day.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court held an evidentiary hearing on July 9, 2021, where the court heard the following testimony.

On June 24, 2021, Appellant had texted the Child to let her know that he would be late. *See* N.T. (7/9/21) at 5. The Child also received a text from Appellant's girlfriend, offering to pick up the Child if it was ok with Appellee. *Id.* at 6. Appellee was not comfortable with Appellant's girlfriend picking up the Child, because Appellee did not really know her. *Id.* About an hour later, Appellant called Appellee to let her know he would be there in a few minutes. Appellee testified: "He told me over the phone, he said, I'm on my way, you stupid cunt." *Id.* at 7. Appellee said Appellant's tone indicated that he was upset. *Id.* Appellee said this made her scared: "…mainly when something doesn't go the way he would like, he gets very irritated and kind of goes off." *Id.*

Appellee testified about what happened when Appellant arrived at her house:

> He pulled up to my house. I had went outside to try to explain the reasoning why I would not like [the Child] to go with his girlfriend, but I wasn't even able to get any of that out. I went up to his truck. I said, hey, can I talk to you more a moment? He got out, slammed the door, came around, and started yelling at me get my effing daughter out here.
>
> After a few times saying that, I said, I just want to talk to you about, you know – he went across my front yard to my house where my husband, [the Child], and my two other small children were inside. He grabbed the storm door of my house and ripped it open and then tried to actually get in the interior door of my house. So I followed him. As he

was going across the front yard, I told him to get off my property and to get away from my house.

Then at that point he was still on my front porch. I got up by my door so he couldn't get in my house. I ended up shutting the storm door. He was still standing there a few feet from me. Then my husband had heard us yelling just back and forth with argument of him getting away from my house. He opened the interior door of the house and looked out, and that's when [Appellant] had seen him and started saying things to him like do you want some of this? Do you want to go, pussy? Then he started punching my front storm door to my house.

At that point he got that close. His chest actually came up against mine. He punched the glass about four or five times. I was very surprised he didn't break it. My husband was just looking for the safety of me, and [the Child] was actually behind my husband, and she witnessed some of it until she went to the kitchen crying in the corner scared because the situation that was going on.

*Id.* at 7-9.

Appellee testified that Appellant pinned her against the door and that she was not able to get away from him. *Id.* at 9. Appellee clarified that she was facing Appellant as he was punching the glass door. *Id.* at 20-21. She testified that she was very scared.

| Appellee's attorney: | Did you feel as though he might hit you? |
| --- | --- |
| Appellee: | While punching the door – I mean he was maybe a foot away from the side of my face while he was punching the glass. |

*Id.* at 9.

Appellee testified that Appellant asked her husband if he wanted to fight. Appellee said she called 911, "because he was just getting out of control at this point. I didn't know if he was going to grab ahold of me or try to get in my house after my kids and my husband." *Id.* at 10. Once Appellant heard Appellee on the phone with the 911 dispatcher, Appellant backed away from the house and waited in the yard for the police to arrive. *Id.* Appellee testified that she sought a PFA order, because she was afraid of Appellant: "He gets very angry. He gets violent." *Id.* at 12. Appellee's husband testified that Appellee was crying and shaking after the incident. *Id.* at 25.

Appellant testified that he did not touch Appellee. *Id.* at 32. Appellant said he only knocked on the door, though he conceded that he knocked hard because Appellee was "screaming at me to leave her porch." *Id.* Appellant explained that he got upset because Appellee's husband was mocking him behind the door. *Id.* at 33. Appellant also disputed that Appellee was between him and the door, and he denied ever pounding the door or calling Appellee a derogatory name. *Id.* at 34-35.

The trial court ultimately granted Appellee's request for protection. The court determined that Appellant committed abuse by placing Appellee in reasonable fear of serious imminent bodily harm. The court's order limited the parties' contact to communication about child custody for one year. *See* Order of Court, 7/9/21.

Appellant timely filed this appeal. He presents one issue for our review:

> Whether the trial court abused its discretion and/or erred as a matter of law in finding that the Appellant had been abusive to Appellee as defined [by] 23 Pa.C.S.A. § 6102(a)(2) when there was no evidence to support that Appellant placed Appellee in reasonable fear of imminent serious bodily injury?

Appellant's Brief at 5.

Initially, we note our standard of review. "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *K.B. v. Tinsley*, 208 A.3d 123, 127 (Pa. Super. 2019)(citation omitted). "An abuse of discretion is more than just an error in judgment, and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will." *Ferko-Fox v. Fox*, 68 A.3d 917, 925 (Pa. Super. 2013). "This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it." *K.B.*, 208 A.3d at 128. We are not entitled to re-weigh the evidence. *Id.* at 130 (citing *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276-77 (Pa. Super. 2019)).

In this case, Appellant contends the trial court abused its discretion when it determined that Appellee provided sufficient evidence to support her request for a PFA order. When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and grant her the benefit of all reasonable inferences. *Id.*, at 128 (citing *Fonner v. Fonner*,

731 A.2d 160, 161 (Pa. Super. 1999)). We then determine whether the evidence was sufficient to sustain the trial court's conclusion. *Id.*, at 128.

The PFA Act is designed to shield a protected party from violence, sexual abuse, or other abuse. *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa. Super. 2008) (citations omitted). The PFA Act does not seek to determine criminal culpability; a petitioner is not requested to establish abuse occurred beyond a reasonable doubt, only by a preponderance of the evidence. *K.B.*, 208 A.3d at 128 (citation omitted); *see also* 23 Pa.C.S.A. § 6107(a). The preponderance of the evidence standard "is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Ferri v. Ferri*, 854 A.2d 600, 603 (Pa. Super. 2004) (citing *Commonwealth v. Brown*, 786 A.2d 961, 968 (Pa. 2001)).

The PFA defines "abuse," in relevant part, as follows:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> > (2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S.A. § 6102(a)(2).

The PFA Act does not provide its own definition of "serious bodily injury" but adopts the definition from the Crimes Code. *See* 23 Pa.C.S.A. § 6102(b) ("Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S.[A.] (relating to crimes and offenses.")).

The Crimes Code provides:

- 6 -

> **Serious bodily injury.** Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protected loss or impairment of the function of any bodily member or organ.

18 Pa.C.S.A. § 2301.

We add that physical contact is not a prerequisite for a finding of abuse under Section 6102 of the PFA Act. *Fonner*, 731 A.2d at 163.

With these principles in mind, we turn to Appellant's argument. Appellant begins by noting that "serious bodily injury" is a heighten definition relative to bodily injury. He explains that he was not punching the door to threaten Appellee, but rather to get the attention of her husband who was taunting him. *See* Appellant's Brief at 25. Appellant states that it might have been reasonable for Appellee to be in fear for her husband, but it was not reasonable for her to be in fear of death, permanent disfigurement or severe injury. *Id.* He maintains that pounding on a storm door in front of someone is not enough to put them in reasonable fear of imminent serious bodily injury. *Id.* at 26.

For support, Appellant cites several precedents involving relatively more concerning behavior. *See, e.g., id.* at 15 (citing *Raker v. Raker*, 847 A.2d 720, 722 (Pa. Super. 2004) (holding that evidence supported a finding that the wife was placed in reasonable fear of imminent serious bodily injury where the estranged husband broke into the wife's home at 2:00 a.m. with a knife)). Appellant argues that, in the absence of physical contact, there must be additional factors to warrant a Section 6102(a)(2) finding, such as property

damage, the presence of a weapon, or a history of abuse. *See* Appellant's Brief at 17, 19. Although such factors would be relevant to an abuse determination, we have never held that they are necessary.

Curiously, Appellant relies on *Fonner* to distinguish the present case. *See id.* at 14-15. In *Fonner*, we concluded there was sufficient evidence to indicate that a wife was in reasonable fear of imminent serious bodily harm. At the PFA hearing, the wife testified that she and her husband engaged in an argument about their divorce. The wife testified that her husband was angry, upset, loud and was badgering her, that he restricted her movement by standing in front of her, that he stood "at a fairly close distance" and then punched the wall in front of her, and that she "believed that he would hit her." *Fonner*, 731 A.2d at 162. We recognize that in *Fonner*, the wife testified that the husband threatened to hit her; instantly, Appellee did not claim that Appellant threatened to punch her. Notwithstanding this distinction, we find *Fonner* analogous to the present matter, rather than dissimilar.

Viewing the evidence in the light most favorable to Appellee, we conclude there was ample evidence from which the trial court could find, by a preponderance of the evidence, that Appellant placed Appellee in reasonable fear of imminent serious bodily injury. Appellee testified that Appellant gets irritated and goes off when he does not get his way, that Appellant called her and her husband derogatory names, and that he invited her husband to fight. Appellee testified she was pinned against the Appellant, as Appellant repeatedly punched the glass storm door near her head. The court explicitly

found this testimony credible. ***See*** N.T. at 37. Appellee also confirmed that she thought Appellant would hit her. That the storm door was not damaged is immaterial. But to that end, Appellant testified that she was surprised the door withstood Appellee's strikes.

We are not persuaded by Appellant's argument that Appellee displayed a lack of fear when she inserted herself between Appellant and the door. ***See*** Appellant's Brief at 23-24. Viewing the evidence in the light most favorable to Appellee, we note her testimony that she stood in front of Appellant because she feared for her children's safety and sought to protect them.

Ultimately, we find that the court's decision was not manifestly unreasonable. ***See Ferko-Fox***, 68 A.3d at 925. When reviewing the record, we must consider the evidence in the light most favorable to Appellee, as the verdict winner, and grant her the benefit of all reasonable inferences. ***K.B.***, 208 A.3d at 128. When doing so, we conclude that the court had sufficient evidence to grant Appellee's petition under Section 6102(a). To rule otherwise would be to re-weigh the evidence, which we are not entitled to do. ***Id.*** at 130 (citing ***C.H.L.***, 214 A.3d at 1276-77).

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2022