J-S13017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SARA G. COX | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEY WILLIAM COX | : | No. 1607 MDA 2024 |

Appeal from the Order Entered October 3, 2024
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-24-02832

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: JULY 3, 2025**

In this matter, Sara G. Cox (Wife) appeals from the order, entered by the Lancaster County Court of Common Pleas, dismissing her petition for a final Protection From Abuse (PFA) order against Bradley William Cox (Husband) and dismissing the temporary PFA order that was previously in place. **See** 23 Pa.C.S.A. §§ 6101-6122. After review, we affirm.

In its opinion filed pursuant to Appellate Rule 1925(a), the trial court provided the following factual and procedural history, in relevant part:

> The parties are married but estranged and are the parents of one [now two-year-old son] . . ., C.J.C. [(the Child)]. At the time the PFA petition was filed, neither custody nor divorce actions had been filed. [FN 1] Both parties are dentists. [Husband] owns and operates a pediatric dental practice while [Wife] stated that she is currently a stay-at-home parent.

FN 1: A search of the electronic docket discloses that [Wife] filed a divorce action on June 19, 2024 . . . and a custody action on August 23, 2024 . . . .

[Wife] filed her PFA petition on April 22, 2024, seeking protection for herself and the . . . [C]hild. [Wife] alleged that [Husband] . . . had physically assaulted her, made threatening gestures toward her, and would come home during the day to check on her as if she had done something wrong. She further alleged that [Husband] demanded sex/sex acts regardless of her feelings or whether she had said no. She also accused [Husband] of financial abuse. With respect to their [C]hild, [Wife] alleged that [Husband] had grabbed the [C]hild forcefully, ripped the [C]hild's clothing off, and held the [C]hild in awkward positions.

Following an ex parte hearing on the same date, [Wife] was granted a temporary protective order which evicted [Husband] from the home and granted [Wife] temporary legal and physical custody of the [C]hild. The case was scheduled for a hearing on April 30, 2024, and was continued on that date upon [Wife's] request to obtain counsel. The hearing was rescheduled to May[] 28, 2024. The temporary order was also amended to allow [Husband] to obtain belongings from the home and to have audio or video calls of up to ten minutes duration with the [C]hild as set up by [Wife].

The hearing itself ultimately extended over three days, May[] 28th, July 2nd, and September 27th, 2024. After the first day, the temporary order was again amended to allow [Husband] periods of supervised visitation with the [C]hild after [Husband's] attorney indicated that the calls with the [C]hild were not working out. [Husband's] mother was tasked to act as the supervisor.

[. . .]

The hearing concluded on September 27, 2024, after which the [c]ourt took several days to review the more than 500 pages of testimony before entering an order. On October 3, 2024, the [c]ourt entered an Order denying [Wife's] request for a final protective order. [. . .]

Trial Court Opinion (T.C.O.), 12/9/24, at 1-9 (footnote omitted).

Wife timely filed this appeal. She presents the following issue for our review:

> Did the Court of Common Pleas err in denying (dismissing) the [Wife's] request for a final order of protection and dismissing the prior Amended and Continued Temporary Order of April 30, 2024?

Wife's Brief at 2.[1]

_____

[1] We note that there are inconsistencies between Wife's Concise Statement of Errors Complained of on Appeal filed pursuant to Appellate Rule 1925(b), the Statement of the Questions Involved section of her brief, and the headings of the Argument section of her brief. **Compare** Wife's Concise Statement of Errors Complained of on Appeal (raising five issues), **with** Wife's Brief at 2 (raising one issue in the Statement of the Questions Involved), **and** Wife's Brief at 16-17 (including a heading and subheading in the Argument section). Wife's sole issue raised in her Statement of the Questions Involved is not explicitly raised in her Concise Statement. However, it appears that the issue presented in her Statement of the Questions Involved is a general framing of her overall issue, *i.e.*, that the trial court erred by not granting her a final PFA order. Conversely, she raised specific issues in her Concise Statement, which she has now largely integrated into the body of her brief. We remind and caution Wife and her counsel that compliance with our Appellate Rules is mandatory, and not raising or preserving issues appropriately could result in waiver. **See** Pa.R.A.P. 1925(b)(4)(i) (explaining that the concise statement "shall set forth only those errors that the appellant intends to assert"); Pa.R.A.P. 1925(b)(4)(vii) (explaining that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); Pa.R.A.P. 2119 (explaining the general rule that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). Nevertheless, we need not find waiver in this instance because Wife's Concise Statement did not impede the trial court's ability to address her appeal in its Appellate Rule 1925(a) opinion, nor has our appellate review been impeded.

We begin with our well-settled standard of review in PFA actions. "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *K.B. v. Tinsley*, 208 A.3d 123, 127 (Pa. Super. 2019) (citation omitted). "A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs 'where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will.'" *Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021) (citation omitted). "This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it." *K.B.*, 208 A.3d at 128 (citation omitted). We are not entitled to reweigh the evidence. *Id.* at 129 (citation omitted). "Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court." *Kaur*, 259 A.3d at 509 (citation omitted).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa. Super. 2008) (citations omitted). The Act does not seek to determine criminal culpability; a petitioner need not establish abuse occurred beyond a reasonable doubt, only by a preponderance of the evidence. *K.B.*, 208 A.3d at 128 (citation omitted); *see also* 23 Pa.C.S.A. § 6107(a). The preponderance of the evidence standard "is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or

- 4 -

requirement for preponderance of the evidence." ***Ferri v. Ferri***, 854 A.2d 600, 603 (Pa. Super. 2004) (citing ***Commonwealth v. Brown***, 786 A.2d 961, 968 (Pa. 2001)).

On appeal, Wife argues that the evidence she presented met the requirements for entry of a final PFA order against Husband. ***See*** Wife's Brief at 16. According to her, this evidence included, *inter alia*, physical assaults, threats involving a gun, forceful contact with the Child, and threats and acts of financial abuse through demands for sexual acts in exchange for financial support. ***See id.*** at 16-17. Wife asserts that the court misapplied the law and abused its discretion because its denial of the final PFA order was "not premised on sufficient, credible evidence." ***Id.*** at 17 (citations omitted).

Wife argues that the evidence showed that Husband abused her by demanding and exchanging sexual acts in return for financial support from Husband, which warrants entry of a final PFA order and establishes the elements of forcible rape. ***See id.*** According to Wife, "the wage earner [Husband] held all of the financial cards over his homemaker and child caring [W]ife." ***Id.*** at 18. Further, "the judge punished this young mother for her attempt to keep her family together despite [] [H]usband's abusive behavior" which Wife states is reversible error. ***Id.*** at 20.

Wife contends that the trial court's opinion "reflects the longstanding stereotype that portrays women as less rational, disciplined, and emotionally stable than men, making them more susceptible to mood swings, irrational reactions, and mental health issues." ***Id.*** "Moreover, [Wife's] detailed and

very specific testimony and discrete abusive acts stood in contrast to []
[H]usband's vague denials. The judge's decision is manifestly unreasonable
because of prejudice towards the 'hysterical' female and disregard for [Wife's]
detailed evidence that established the preponderance of the evidence
standard[.]" *Id.* (citation omitted).

Overall, Wife spends much of her argument recounting her testimony
from the PFA hearing. She then asserts that "[t]he [trial court] judge's
rejection of [Wife's] detailed testimony disregarded that [Husband], as [Wife]
explained to the judge, was manipulative." *Id.* at 24. Wife ultimately
concludes that, by denying entry of the final PFA order and dismissing the
temporary PFA order that had been in place, the trial court failed to protect
her. *See id.* at 25.

The trial court explained its rationale for denying entry of the final PFA
order as follows:

> [Wife's] allegations turn principally upon the issue of
> credibility, and [Wife's] mere assertion that her evidence
> was credible while [Husband's] was not or that the evidence
> which [Wife] has cherry-picked from the extensive record
> would require entry of the order which [Wife] sought is of
> no import. The [c]ourt, having had the ability to see, hear,
> and evaluate the testimony of the parties over an extended
> hearing determined that [Wife] was not sufficiently credible
> to sustain the burden of proof.
>
> The [c]ourt found that [Wife's] behavior consistently
> belied the fear she claimed to experience at the presence of
> a firearm in the home. She did not leave the home, and, in
> fact, said that she simply went to sleep down the hall in the
> [C]hild's room. She did not remove the weapon or take any
> steps to render it safe. She did not make any report to the

police. She told the [c]ourt she had no place to go, but conceded her family had another house in the neighborhood. Her only explanation for not going there was that it was empty and not child-proofed. She said she had no money, but conceded she had several thousand dollars in her own account. Although she testified in dramatic language about [Husband's] actions describing [Husband] as "storming," "stomping," and "raging," and stating on multiple occasions that she thought [Husband] would shoot her and the [C]hild, much of this testimony is inconsistent with the contemporaneous record made by the voluminous number of texts between the parties, both contemporaneous with and subsequent to the alleged abuse, which were entered into evidence.

The [c]ourt also found [Wife's] allegations with respect to [Husband's] conduct toward the [C]hild to be no more than the characterizations of an extremely overprotective parent. [Wife] stated that she was always with the [C]hild, and that she co-slept with the [C]hild. Despite her claims about how [Husband] treated the [C]hild, [Wife] never made any report of abuse and never sought medical attention for the [C]hild. Although she claimed that she would not leave the [C]hild alone with [Husband] out of fear of what he might do, she conceded that there were times she did in fact leave the [C]hild with [Husband]. [Wife] was also involved in an incident in the mall when custody was being exchanged through [Husband's] mother for him to have a period of custody with the [C]hild. Despite [Wife] and the members of her party being "hysterical" in the estimation of the mall security chief, surveillance video and [Husband's] own video, shot from a distance from the incident, showed [Wife's] fear to be overblown and police dismissed the matter. Further, [Wife] conceded that she offered the [C]hild her breast while the [C]hild was on a call with [Husband], thus engaging in behavior which served to distract the [C]hild from the minimal contact [Husband] was granted under the temporary order. The [c]ourt found [Wife's] explanation that she did so because the [C]hild was dehydrated to be utterly unconvincing and damaging to [Wife's] credibility.

Although [Wife] claimed that [Husband] forced her to engage in certain sex acts, the [c]ourt was not convinced

that she did so as the result of economic coercion rising to the level of forcible compulsion. [Husband] testified equally plausibly that [Wife] was the initiator of such acts and the fact that [Wife] testified after the fact that she felt compelled and ashamed is not convincing. Again, the [c]ourt notes that [Wife] did not make any sort of contemporaneous record of the incidents and she did not contradict [Husband's] assertion when testifying on rebuttal.

While [Wife] maintained that [Husband] exercised economic control over her, the evidence adduced at the hearing did not show that [Wife] was without means. [Husband] said [Wife] owned the marital residence, which she did not deny. [Wife] also said she had several thousand dollars in her own account. Ultimately, both parties testified about the financial aspects of the case and the [c]ourt determined that the financial records of either party were not necessary. [Wife] testified without documentary or testimonial evidence that the dental practice had been given to her and then was taken from her by [Husband]. She even told this to . . . the director of mall security, when she met with him after the incident at the mall, even though this information had nothing to do with her reason for meeting with [him]. [Husband], however, testified that he had purchased the practice. [Wife] testified that [Husband] prevented her from working in the practice as a dentist and that he seriously limited the hours she could work. [Husband], however, testified that the plan had been for both to work, but that [Wife] chose not to after the birth of their [C]hild. He stated that he paid for [Wife's] professional insurance and continuing professional education, and that he even bough[t] specialized equipment for her to use in the practice.

In the final analysis, the [c]ourt found [Husband] more credible than [Wife] such that the standard of proof for entry of a final protective order was not met. The [c]ourt also notes that the parties have separated and are in the process of divorcing. The goal of the PFA statute is to prevent domestic abuse from occurring. The current situation between the parties is such that there is little prospect of future abuse and, therefore, no need of an order to prevent such abuse.

T.C.O. at 11-13.

Wife's argument fails to appreciate the standard of review we must apply to PFA matters. Her argument focuses on the evidence she presented at the PFA hearing and asserts that it was sufficient to support the entry of a final PFA order. However, we reiterate that, as the factfinder, it was the trial court's purview to weigh the evidence and make credibility determinations. *See C.H.L. v. W.D.L.,* 214 A.3d 1272, 1276 (Pa. Super. 2019) ("[T]he credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder.") (citation omitted).

Here, the trial court found Husband's testimony to be more credible than Wife's testimony. *See* T.C.O. at 11, 13. Wife is essentially asking us to reweigh the evidence in her favor and find her testimony more credible. This we cannot do. As an error-correcting appellate court, we must defer to the trial court's credibility determinations, and we are not entitled to reweigh the evidence. *See K.B.*, 208 A.3d at 128-29. Further, we note that the trial court was "free to believe all, some, or none of [Wife's] testimony." *Id.* at 128 (citation omitted).

We are also unpersuaded by Wife's argument that the trial court's denial of the final PFA order was not based on "sufficient, credible evidence." *See* Wife's Brief at 17 (citations omitted). We remind Wife that, as the petitioner, it was her burden to establish that abuse occurred by a preponderance of the evidence. *K.B.*, 208 A.3d at 128 (citation omitted). The trial court found that

Wife's evidence was insufficient, largely based on its perception of her credibility. *See* T.C.O. at 11-13. For example, the court found that Wife's behavior belied the fear she testified to experiencing from a firearm being in the home. *See id.* at 11. Although Wife testified to having no place to go and no money, she conceded that she owned the marital residence, her family had another house in the same neighborhood, and she had several thousand dollars in her bank account. *See* T.C.O. at 11-13; *see also* N.T., 4/30/24, at 6-7; *see also* N.T., 9/27/24, at 50, 56-58. Further, although Wife stated that she would not leave the Child alone with Husband, she conceded there were times that she did leave the Child alone with him. *See* T.C.O. at 12; *see also* N.T., 7/2/24, at 94-95, 104. Wife also admitted to behavior that distracted the Child during a video call with Husband, which damaged her credibility to the court. *See* T.C.O. at 12; *see also* N.T., 7/2/24, at 158, 160-61. The trial court found that Husband testified equally plausibly that Wife initiated the sexual acts that she claimed he forced her to engage in. *See* T.C.O. at 12. The trial court also weighed Wife's and Husband's competing testimony regarding Husband's dental practice and whether he stopped her from working, and the court found Husband more credible. *See id.* at 13. Thus, the trial court's denial of the final PFA order was supported by evidence of record and the court's credibility determinations.

Further, we are unpersuaded by Wife's assertion that the trial court's decision is "manifestly unreasonable because of prejudice towards the 'hysterical' female and disregard for [Wife's] detailed evidence." Wife's Brief

- 10 -

at 20 (citation omitted). The trial court's opinion does not indicate that it disregarded Wife's evidence. Instead, the opinion extensively details Wife's testimony throughout the hearing. *See* T.C.O. at 2-8, 11-13. Thus, this evidence was not disregarded by the court; the court simply felt that Wife was less credible than Husband. *See id.* at 11, 13.

Additionally, Wife's claim of prejudice is belied by the record. The hearing transcripts do not indicate that the trial court was prejudiced against Wife, nor does she point us to somewhere in the record where the court showed prejudice. When the trial court used the word "hysterical" in its opinion, it was citing a witness who described Wife as "hysterical" during a custody exchange. *See id.* at 12; N.T., 9/27/24, at 172 (a witness describing Wife, her mom, and her sister as being "very hysterical"). Thus, the trial court was not showing "prejudice towards the 'hysterical' female" as Wife claims. It was instead citing testimony from the PFA hearing. Additionally, we see no evidence that the trial court was punishing Wife for anything, and Wife does not point us to anything in the record to support this claim. The trial court was simply weighing the evidence presented to it.

Lastly, we address Wife's claim that when the trial court rejected her testimony, it disregarded that Husband is manipulative. This claim also fails. As explained above, the court's opinion makes clear that it evaluated Wife's and Husband's competing testimony and found Husband more credible. *See* T.C.O. at 11, 13. Having seen and heard the witnesses firsthand, the trial

court rejected the notion that Husband was manipulative. Again, we defer to the trial court on credibility. **See K.B., supra**. This issue merits no relief.

In sum, we discern no error of law or abuse of discretion in the trial court's decision to deny entry of the final PFA order and to dismiss the previously entered temporary PFA order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/3/2025